John B. Goodman, Plaintiff-Appellee, v. Terminal Railroad Association of St. Louis, a Corporation, Defendant-Appellant.

Gen. No. 65–23.

Fifth District.

March 16, 1966.

Roberts, Gundlach, Lee & Stubbs, of East St. Louis (Norman J. Gundlach, Edward W. Stubbs, Jr., and George P. Mueller, of counsel), for appellant.

C. E. Heiligenstein, of Belleville, for appellee.

EBERSPACHER, J.

Plaintiff Goodman, employed as a carman's helper or carman by the Terminal Railroad Association of St. Louis, brought suit against his employer in the Circuit Court of St. Clair County for damages under the Federal Employers' Liability Act. Trial before a jury resulted in a verdict of $125,000 for the plaintiff. Defendant's post-trial motion was overruled and the judgment allowed to

stand conditional upon the plaintiff filing notice of remit-titur, in the amount of $45,000 which notice was filed by plaintiff. Defendant has perfected his appeal to this court, urging that the trial court should have granted defendant's motion for judgment notwithstanding the verdict and in the alternative that the court erred in refusing defendant's motion for a new trial.

The injury for which the action was brought was sustained on Saturday, February 3rd, 1962, while plaintiff with two other employees, was engaged in removing a car door weighing 480 pounds, pursuant to a call made by Cox, the assistant yardmaster of defendant's C. D. Yards, in East St. Louis, over the loudspeaker system, to the effect that a car door had fallen off and was leaning against a car on track 22, and was fouling tracks 23 and 24 so that they could not be switched. All three of the tracks had cars on them. Upon the call being made, plaintiff walked to the shanty from which the call came where he and another carman, Dumstorff, were advised where the door was and proceeded to the spot. Upon arrival Dumstorff tipped the door over on a track and plaintiff and Dumstorff chained it to a switch engine which had been sent by the yardmaster and which pulled it to a clearing. While attaching it to the switch engine, a third carman, Berry arrived, and upon the door being either disconnected from the engine or the chain coming untied at the clearing, the three carmen turned it end over end, two times, in order for it to clear the tracks; the first time without incident, and on turning it over the second time, plaintiff testified, he felt a sharp pain on the right side of his back.

Plaintiff continued on the job until February 7 when he consulted a doctor, and was hospitalized for 12 days. On April 5th he was again hospitalized, a laminectomy performed on April 24th, and surgery to evacuate a clot on May 4th. Although he was discharged from the hospital

85

on May 12, he was returned to the hospital subsequently in an attempt to restore motion to his back by stretching it under anesthesia; the attempt was unsuccessful and he walks with a cane and is bent over twenty to thirty degrees, totally disabled from any gainful employment. Plaintiff has suffered no pain since his surgery but requires medication, as well as treatment for a nervous condition, and wears a brace.

The record also shows that he had had a laminectomy in 1957, followed by hospitalization in April 1958 as a result of attempted suicide, was off work from April 5 to June 16, 1958, and was off work, due to what was diagnosed as a nervous breakdown, from September 5 to the middle of November 1958. He had been employed by defendant as a carman or carmen's helper for 14 years prior to 1962, and with both Berry and Dumstorff, was at the time of this occurrence under the supervision of the car foreman, Samuel Martin, who was not present in the yards on February 2, 1962, but was on call. Martin knew plaintiff had undergone back surgery in 1957, and testified that plaintiff did the work assigned him without any difficulty. The record is silent as to whether Cox knew of plaintiff's previous disability, or the size or weight of the door.

There is a conflict in the evidence as to the customary manner of removing fallen car doors; there was testimony that machinery was used to remove them as well as testimony that they were frequently removed by human strength; there was also testimony that when removed by human strength as many as eight men were required and testimony by Dumstorff that similar doors had been and could be safely flipped over by three men. The safety rules provided against any employee engaging in unsafe work. There is undisputed evidence that the three men were not directed in the manner in which they were to remove the door, and that no one of them was in charge of the others. Likewise, it is undisputed that

86

there was available in nearby yards, upon a call from a person in authority, a truck which had been used to pick up doors previously; Cox had authority to call for the truck but the truck was not called for. There is also testimony that cars were on the tracks, so that without switching the cars the truck could not have reached the point at which the door had fallen. The record is silent as to whether the truck crew would have responded to a call from any of the three carmen, including plaintiff.

In the complaint plaintiff charged that defendant negligently, (1) failed to provide plaintiff with sufficient, adequate or proper tools or machinery with which to do his work, (2) failed to provide sufficient employee assistance to perform the assigned duty, and (3) assigned work that defendant knew, or by the exercise of reasonable care should have known, would have caused or aggravated plaintiff's preexisting condition. The answer denied each and every allegation of negligence and in its additional defenses defendant claimed plaintiff's injuries were caused by his sole negligence, or in the alternative that his negligence contributed to cause his own injuries; the additional defenses were denied by plaintiff.

■■■■■■ The principal issue is whether the evidence was sufficient to go to the jury on the question of negligence. Under the Federal Employers' Liability Act a carrier is liable in damages for injury resulting in whole or in part from the negligence of any of its officers, agents or employees. Assumption of risk is no defense nor does contributory negligence bar a recovery. In determining whether a verdict in plaintiff's favor is supported on the record, the sole question is whether there is any evidence, considered in the light most favorable to the plaintiff, that defendant was guilty of negligence which contributed in whole or in part to the injury. (Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212; Hall v. Chicago & N. W. Ry. Co., 5 Ill2d 135, 125 NE2d 77.) In Rogers v. Missouri Pac. R. Co., 352 US 500, it was held that under

87

the Federal Employers' Liability Act, the test of a jury case is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury. Where as here, a motion is made for judgment notwithstanding the verdict, a question of law is presented as to whether, when all the evidence is considered together with all reasonable inferences therefrom in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove a necessary element of plaintiff's case. (Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212; Bonnier v. Chicago, B. & Q. Ry. Co., 2 Ill2d 606, 119 NE2d 254.)

 As to whether there was any negligence on the part of either defendant or plaintiff in the state of this record, was a question of fact to be resolved by the jury, from the evidence they heard. Considering the evidence as a whole, we think there is sufficient evidence from which the jury could find that the defendant failed to furnish equipment suitable for the job plaintiff was expected to do or that defendant failed to provide plaintiff with sufficient employee assistance and that such failure contributed at least in part to the injury. The fact that there was a truck with a hydraulic lift that was used on many occasions to move these doors indicates that the defendant recognized that special equipment might be needed for the removal of these doors. They may have reasonably concluded, from the lack of proof that the truck would not have been available to the carmen on the carmen's call, that a carman had no authority to call; and in view of Dumstorff's testimony that three men could safely flip such a door, that plaintiff by his participation in selection of the manner of moving the door, was not negligent. There is nothing in the record to show that plaintiff or any of the carmen had authority to refuse to do the work, unless it was unsafe, or order

mechanical equipment. The defendant is chargeable with the knowledge of its employee Martin, that plaintiff had preexisting spinal surgery and the jury could have reasonably concluded that defendant was negligent in assigning plaintiff to a duty which could aggravate a preexisting physical condition. The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. (Finley v. New York Cent. R. Co., supra.)

Defendant urges that in view of the facts that Cox did not tell the three experienced carmen the manner in which the work was to be done, and was not on the scene when it was done, that the three carmen chose the allegedly unsafe method and that if any negligence was involved it was the negligence of plaintiff who should have best known his own physical limitations, and who participated in the decision to use the allegedly unsafe method, without complaint and without requesting more manpower or mechanical equipment. In support of this contention, defendant urges that Wadiak v. Illinois Cent. R. Co., 208 F2d 925, is factually analogous and that its holding to the effect that the law imposes no liability where the plaintiff has a choice of methods and nothing was done by the defendant to cause injury in the method voluntarily chosen by the plaintiff, is applicable herein.

With this contention we do not agree. The Wadiak case was a comparatively simple factual situation in which the reviewing court found that adequate equipment with which to do the work safely was available. In the present case the ready availability of equipment and additional manpower are controverted. In the Wadiak case the question of the employee's negligence was approached on the theory that "the weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may properly be left to the discretion of the jury." That such theory in a case under the Feder-

al Employers' Liability Act is erroneous is suggested by a host of later cases.[1] In Deckert v. Chicago & E. I. R. Co., 4 Ill App2d 483, 124 NE2d 372, even though making a pronouncement wherein it was stated at page 493:

"If a workman is provided with a safe method of doing his work, but selects another more hazardous method, it might be said that he voluntarily assumed the risk, but even in such case it might be better said that the employer has discharged his duty by providing a safe method, and therefore was not negligent,"

the court distinguished the Wadiak case on the facts, in a case in which the risk of employee's falling was so obvious that it was only reasonable to assume that the employee perceived it, and affirmed recovery. There the court said at page 491,

"Of course, he could (at least in theory) have refused to perform the assigned task. While the defendant does not state it in plain words, this argument necessarily implies that the plaintiff assumed all the risk, when he undertook to do the work without adequate equipment and appliances."

▮▮▮▮▮ Under FELA, a plaintiff assumes no risk, and the rule simply stated is that under FELA, if there is even the slightest evidence from which a jury could reasonably infer negligence of the railroad, the case

[1] Rogers v. Missouri Pac. R. Company, 352 US 500; New York, New Haven & Hartford R. Co. v. Henagan, 272 Fed2d 153 (faintest scintilla of evidence suggesting negligence); Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212; Lavender v. Kurn, 327 US 645; Busser v. Noble, 22 Ill App2d 433, 161 NE2d 150; Stowers v. Carp, 29 Ill App2d 52, 172 NE2d 370; Dimucci v. Garnello, 43 Ill App2d 426, 193 NE2d 601; Hinrichs v. Gummon, 41 Ill App2d 428, 190 NE2d 610; Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 169 NE2d 372; Gallick v. Baltimore & Ohio R. Co., 372 US 108, 25 NACCA 251.

should go to the jury, regardless of the plaintiff's negligence, if any. The test in determining if an FELA case should go to the jury is not the negligence of the plaintiff, if any, or the extent of plaintiff's negligence, but only the question as to whether the carrier might reasonably be found to be negligent in any degree. It is only after a jury has reasonably found from the evidence that there was negligence of the carrier which contributed to the accident that any negligence of the plaintiff is to be considered in their deliberations, and then only for the purpose of determining the extent of the damages.

 It being a jury's function to weigh contradictory evidence, judge the credibility of witnesses and draw the ultimate conclusion as to the facts, its conclusion, whether relating to negligence of either a plaintiff or defendant, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn by reasonable men, or because judges feel that other results are more reasonable. (Finley v. New York Cent. R. Co., supra; Dowler v. New York, C. & St. L. R. Co., 5 Ill2d 125, 125 NE2d 41.) Here there was evidence of urgency to get the tracks cleared, only three men had been provided at the scene to do the job they were directed to do, a machine which could have lifted the door was available on call of an authorized person but was not made available at that time and place and one of the men directed to the job had a physical handicap; from this we cannot say that reasonable minds could only come to the conclusion that there was no negligence of the railroad in either not furnishing adequate manpower, not furnishing proper equipment, or furnishing a handicapped man.

We therefore conclude that defendant's post-trial motion for a judgment notwithstanding the verdict was properly denied below.

 In support of the motion for new trial defendant urges that its motion made during the course of plain-

tiff's counsel's opening statement for a mistrial and withdrawal of a juror should have been granted. Plaintiff, while working for the defendant, had suffered several injuries previous to the one upon which he brought this action. One was a back injury, which injury required surgery at the same level as that in the present suit. Plaintiff told the jury that these injuries were sustained while the plaintiff was working for the defendant and that no claims were made against the Terminal Railroad Association of St. Louis, the defendant, for any injuries. While the remarks were improper, this conduct is not coupled with repeated misconduct, or injection of prejudicial remarks or evidence during the course of a four-day trial. Plaintiff's physical condition and prior medical history was put into evidence without objection and was also the subject of evidence adduced on cross-examination. The fact that no claim for prior injuries had ever been made appears no other place in the record. The jury was properly instructed with reference to being influenced by sympathy, as to what evidence was to be considered, and pointing out that arguments, statements and remarks of counsel were not evidence. We cannot say in this case that the fact that the jury returned a verdict for a greater amount than the trial court let stand indicates that they were attempting to compensate plaintiff for previous injuries sustained, nor that the trial court in ordering a remittitur, did so under the theory that the jury had taken previous unsettled claims into consideration.

Defendant also contends there was error in the giving of certain of plaintiff's tendered instructions over defendant's objection. It argues that the issue instruction, tendered by plaintiff and including the three charges of negligence, was not proper because there was no evidence of defendant's failing to provide adequate equipment, but that the equipment was available and plaintiff chose not to request it, and because Cox had no knowledge of plaintiff's preexisting physical condition, nor did he

know the means the men might select to move the door. Our previous comments on what conclusions a reasonable jury might reach from this evidence, disposes of this objection. Defendant also argues that IPI instruction 160.02, the "rule of liability" instruction, was not properly given since it contained the insertion "the negligence of any of the officers, agents or other employees of the railroad or by reason of any failure or insufficiency to furnish adequate help or equipment to plaintiff, due to the railroad's negligence" and thereby sought to tell the jury that defendant is liable when there is a failure to furnish adequate help and machinery, and should not be given without modification, when as here, defendant contends the injury was caused solely by plaintiff's negligence. The notes in IPI on the use of this instruction recommend its modification when the contention is made and supported by evidence that the employee's negligence is the sole proximate cause of the accident. We cannot say that the evidence supports the proposition that the employee's negligence, if any, is the sole proximate cause of the accident, or that as a matter of law plaintiff was negligent, and therefore consider the instruction as given, proper.

Defendant also contends that there was error in giving plaintiff's instruction 17, IPI 34.04, in which was included the following:

"With respect to a loss of future earnings you may consider that some people work all their lives and others do not; that a person's earnings may remain the same or may increase or decrease in the future.

"According to the evidence in this case, the life expectancy of a person aged 52 years is 20.88 years and the work expectancy of a person aged 52 years is 10.81 years. This figure is not conclusive. It is the average work and life expectancy of persons who

93

have reached the age of 52. It may be considered by you in connection with other evidence relating to the probable work and life expectancy of the plaintiff in this case, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons work and live longer and some persons less than the average.

"In computing the damages arising in the future because of injuries, because of future medical expenses or because of the loss of future earnings you must not simply multiply the damages by the length of time you have found they will continue or by the number of years you have found that the plaintiff is likely to work or live,"

because the whole medical evidence in this case as it concerned the plaintiff's work or life expectancy was from plaintiff's witness, Dr. Fritsch, who stated that plaintiff, due to causes not related to this injury, was prematurely old, and that because of plaintiff's condition he would not have lived or worked a normal or average expectancy. The court refused defendant's instruction 6 which substituted for the quoted language of plaintiff's instruction 17, the following language:

"According to a table of mortality in evidence, the life expectancy of a person aged 52 years is 20.88 years and according to a table of work expectancy, a person aged 52 years would work 10.81 years. You should consider that the plaintiff will live less than a normal expectancy and he would have worked less than a normal expectancy.

"In computing the damages arising in the future because of injuries or because of future medical expenses or because of the loss of future earnings, you must not simply multiply the damages by the length of time you have found that they will continue or by

94

the number of years you have found that the plaintiff is likely to have lived or to have worked,"

and urges that it was the proper statement of the law under the evidence in this case rather than the quoted portion of plaintiff's 17. The court also refused defendant's instruction number 5 which it urges was imperative in order for the jury to get a fair and accurate understanding of the elements of damage after plaintiff's 17 was given. Defendant's 5 was in the following form:

"In the event that you find the plaintiff is entitled to damages arising in the future as defined in other instructions, you must determine the amount of these damages.

"In determining the amount such damages, you should relate such damages to the evidence that plaintiff will live less than a normal expectancy and he would have worked less than a normal work expectancy."

 Plaintiff's instruction 17 pointed out that the mortality table evidence was not conclusive and that it might be considered in connection with other evidence relating to the probable life and work expectancy of the plaintiff, bearing in mind that some persons work and live longer and some persons less than the average. It left room for the jury to exercise their right to consider all the evidence in the light of their own observation and experience in the affairs of life, as they were instructed to do by a tendered instruction of defendant. It did not contain the positive language of defendant's 5 and 6 that plaintiff "will live less than a normal expectancy and he would have worked less than a normal expectancy." To require a jury to accept and be bound by a doctor's prediction of expectancy would deprive them of consideration of their own observation and experience with reference to such predictions. We find no re-

versible error in the instructions as ruled upon, and considering all the instructions as a series, consider that the jury was fairly and clearly informed of their duties as triers of the facts.

Plaintiff urges that there is sufficient evidence of damage to restore the jury's verdict of $125,000, and that the trial court should not have reduced the damages awarded the 52-year-old permanently crippled and unemployable plaintiff; while defendant urges that the remaining $80,000 award is excessive in view of plaintiff's negligence and expectancy. Defendant urges that the jury should have found contributory negligence and thus mitigated the damage, and that the jury erroneously ignored evidence of less than average expectancy.

 Reviewing the evidence in this case, we cannot assume that this properly instructed jury either found or did not find contributory negligence, nor can we assume that if they did find any contributory negligence, that they ignored that part of IPI instruction (Plaintiff's 14) which included the following language:

> "Contributory negligence on the part of the injured employee shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

and the Contributory Negligence Definition instruction, I PI 11.01, was given. Neither can be assume that because the trial court ordered a remittitur that the jury had erroneously ignored evidence of less than average expectancy. They were instructed by Plaintiff's 17 that the figures shown by the mortality table were not conclusive and might be considered with other evidence relating to the probable work and life expectancy of plaintiff.

 Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in

96

making its determination: in a court of review, the discretion of the trial judge, in ruling on the post-trial motion, is entitled to the same deference. Lau v. West Town Bus Co., 16 Ill2d 442, 158 NE2d 63. He had the opportunity to see and hear the witnesses as well as observe the jury throughout the trial, and unless there is a clear abuse of discretion in granting a new trial his judgment should not be disturbed. Here the trial court's order denying the post-trial motion for a new trial, was entered on the condition of a notice of remittitur; that action was the same as granting the new trial conditioned on plaintiff's failing to file notice of remittitur. The discretion of the trial judge in granting a new trial on condition, should be entitled to the same respect as when it is exercised in granting a new trial unconditionally. Here the exercise of that discretion was based on questions of evidence and fact rather than law, and we find no clear abuse of that discretion.

The remittitur will stand, and the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

MORAN and GOLDENHERSH, JJ., concur.