THE NORTHERN TRUST COMPANY *et al.*, Plaintiffs-Appellees, v. THE COUNTY OF COOK *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 84—2234

Opinion filed July 23, 1985.—Rehearing denied August 26, 1985.

Winston & Strawn and Friedman & Koven, both of Chicago (Richard J. Brennan, Edward J. Wendrow, Clive M. Topol, John B. Simon, Russ M. Strobel, and Sherre Binik Levene, of counsel), for appellants.

Letvin & Stein and George M. Elsener & Associates, both of Chicago (David J. Letvin, David Stein, and George M. Elsener, of counsel), for appellees.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal by the County of Cook and six physicians employed by it from a judgment on a jury verdict of $8,126,711 in a medical malpractice action and the award of prejudgment interest on the nonpecuniary elements of the verdict.

Shortly after his birth at Cook County Hospital on December 10, 1976, plaintiff Naymat Ahmed developed meningitis and ventriculitis,

which resulted in the destruction of a substantial portion of his brain. At the time of trial, plaintiff was 7½ years old. He was profoundly and severely retarded, unable to walk or speak and unable to be toilet trained. He suffers seizures, has undergone surgery to allow the full extension of his limbs and is developing a curvature of the spine.

After his discharge from Cook County Hospital on January 21, 1977, plaintiff lived at home and received daily special education training, including physical, occupational, speech and music therapy, at Little Friends Sheltered Workshop in Naperville, until July 1979, when plaintiff and his family moved to India. In India, plaintiff underwent a neurological examination by a "homeopathic" doctor. As a result of this consultation, plaintiff's parents discontinued anticonvulsant medication prescribed by U.S. physicians and began homeopathic treatment. During plaintiff's stay in India, from July 1979 to June 1981, he received physiotherapy at Nilofer Children's Hospital, was fitted with orthopedic shoes and braces, and was seen by a pediatrician.

Plaintiff returned to the U.S. in June 1981, and received special education at the Indian Prairie School in Naperville until January 1982, when the family moved to Houston, Texas. Plaintiff has attended public schools in the Alief School District in suburban Houston since January 1982 and receives special education services on weekdays, such services consisting of physical, occupational, speech and music therapy, adaptive physical education and special transportation. He receives 30 hours per week of such services from the Alief School District.

Prior to trial in 1984, defendants admitted liability for plaintiff's injuries, and the trial proceeded solely on the issue of damages. In closing arguments, plaintiff's counsel asked the jury to award plaintiff nearly $13,000,000. The jury awarded $2,500,000 for plaintiff's disability and disfigurement, $1,500,000 for past and future pain and suffering, $1,200,000 as the present cash value of future expenses of medical care and services, $2,579,725 as the present cash value of future expenses for necessary care in plaintiff's home, and $346,986 as the present cash value of plaintiff's lost future earnings after he reaches 22 years of age. These awards total $8,126,711.

After the verdict was returned, plaintiff requested the assessment of prejudgment interest. The trial court ordered defendants to pay prejudgment interest on the $4,000,000 awarded for disability, disfigurement, pain and suffering from December 10, 1976, the date of plaintiff's injury, to May 29, 1984, the date of judgment, at the prevailing rate of interest on judgments.

Defendants appeal the judgment, disputing the propriety of certain evidentiary rulings and jury instructions, the amount of the verdict, and the award of prejudgment interest.

■ Defendants first contend that the trial court erred in excluding from evidence a study entitled "Life Tables for the Institutionalized Mentally Retarded," a 64-page report of a study of the lifespans of 14,000 mentally retarded persons admitted to a California State hospital for a 47-year period, from 1927 to 1974. This study contained findings which lead to the conclusion that an institutionalized 7½-year-old profoundly retarded, nonambulatory and non-toilet-trained child will live, on the average, to an age of only 25 years. Two of the authors of the study, Dr. Eyman and Dr. Grossman, testified as to the content of the study, and the study's mortality tables were admitted into evidence.

The trial court excluded the study on hearsay grounds. The fundamental purpose of the hearsay rule is to test the real value of testimony by exposing the source of the assertions to cross-examination by the party against whom it is offered. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738.) In the instant case, the study offered into evidence by defendants was co-authored by several persons, not all of whom were available at trial for cross-examination. Drs. Eyman and Grossman, two of the authors, testified as to the content of the study and the conclusions reached therein. However, their availability at trial did not expose the source of the entire document to cross-examination, where the remaining authors did not testify, and did not cure the document's hearsay status. Additionally, it is apparent from the record that the testimony of Drs. Eyman and Grossman, combined with the admission into evidence of the study's mortality tables, provided the jury with all the relevant information which could have been gleaned from an examination of the text of the study itself. We therefore find that the trial court did not err in refusing to admit the study into evidence.

■ Defendants next contend that the trial court erred in giving the jury instruction tendered by plaintiff as to life expectancy. Defendants argue that the instruction given the jury by the court ignored defendants' evidence, based upon expert testimony regarding the "Life Tables for the Institutionalized Mentally Retarded," that plaintiff's life expectancy was approximately 25 years, as opposed to 70.8 years for the average U.S. male.

The instruction tendered by plaintiff and given to the jury by the court reads, in pertinent parts, as follows:

"According to a table of mortality, the life expectancy of a per-

son aged 7-1/2 years is 63.3 years. This figure is not conclusive. It is the average life expectancy of persons who have reached the age of 7-1/2. It may be considered by you in connection with other evidence relating to the probable life expectancy of the plaintiff in this case, including evidence of health, habits, and other activities, bearing in mind that some persons live longer and some persons less than average."

Defendants argue that their evidence proved conclusively that plaintiff would not live beyond his twenties, and that the jury should have been so instructed. We disagree.

Plaintiff's instruction as to mortality pointed out that the mortality table's figure was not conclusive and that it might be considered in connection with other evidence relating to the probable life expectancy of plaintiff. The instruction left room for the jury to exercise their right to consider all the evidence in the light of their own observation and experience in the affairs of life. The instruction permitted the jury to consider both defendants' evidence that plaintiff would live only 25 years and plaintiff's evidence that his life expectancy was that of a normal child. "To require a jury to accept and be bound by a doctor's prediction of expectancy would deprive them of consideration of their own observation and experience with reference to such predictions." (*Goodman v. Terminal Railroad Association* (1966), 68 Ill. App. 2d 80, 95, 215 N.E.2d 451.) We find no reversible error in the instruction complained of.

■ Defendants next contend that the trial court erred in prohibiting them from proving the availability to plaintiff of free governmental services for handicapped children and in refusing to instruct the jury as to the availability of such services. Although Illinois law generally prohibits a plaintiff from recovering for "the value of services that he has obtained without expense, obligation, or liability" (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 362, 392 N.E.2d 1), the trial court here refused to allow the jury to consider the free governmental services due to the uncertainty of their availability in the future. We find no error in the trial court's decision. In *Peterson*, the plaintiff had already completed charitable surgical services prior to seeking compensation for the same services from the tortfeasor. The *Peterson* court did not decide the issue of reducing a defendant's liability for future care because of the current availability of charitable and public welfare programs. In *Peterson*, the charitable assistance had already been received. In the instant case, however, the availability and level of future free services is a matter of speculation. (See *Florida Physician's Insurance Reciprocal v. Stanley* (Fla.

1984), 452 So. 2d 514, 516-17 (Shaw, Adkins and Boyd, JJ., dissenting).) We therefore find that the trial court correctly prohibited evidence or jury instructions as to free services which may be available to plaintiff in the future.

■■ Defendants next contend that the trial court erred in refusing their jury instruction No. 17, which specified that plaintiff should recover only for "conscious" pain and suffering. In support of this argument, defendants point to testimony that plaintiff, because of his severe brain injury, does not suffer pain as acutely as do people with normal brains. This evidence was contradicted by the testimony of plaintiff's physical therapist, who stated that plaintiff responded to the pain associated with vigorous physical therapy in the same manner as other children with whom she has worked.

The decisions cited by defendants in support of their argument concerning instruction No. 17 focus on comatose plaintiffs who, it is presumed, do not feel pain because they are unconscious. We find that defendants' contention is without merit. The failure to include the word "conscious" in a pain-and-suffering instruction where the plaintiff has never been comatose or unconscious is not reversible error. *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 520, 468 N.E.2d 1228.

■■ Defendants next contend that the trial court erred in refusing defendants' instructions Nos. 20 and 21, informing the jury that personal injury damage awards are not subject to income taxes and instructing them not to consider such taxes in fixing the amount of any award made to plaintiff. Our supreme court has recently reiterated the rule that juries should not be instructed concerning income taxes in personal injury and wrongful death actions pursuant to State law. (*Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 454-55, 475 N.E.2d 857.) Defendants' contention regarding the failure of the trial court to give such an instruction is therefore without merit. We find that the jury was fairly and clearly informed of their duties as triers of the facts.

■■ Defendants contend that the $8,126,711 award to plaintiff was excessive and was not supported by the evidence. Our supreme court has stated that the amount of damages to be assessed is peculiarly a question of fact for the jury, and that if the jury has been properly instructed on the measure of damages, a reviewing court should not substitute its judgment for that of the jury as to the sum to be awarded. (*Baird v. Chicago, Burlington & Quincy R.R.* (1976), 63 Ill. 2d 463, 472-73, 349 N.E.2d 413.) The test for an excessive verdict is whether it falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*LeMaster v. Chicago Rock Island & Pacific R.R.* (1976), 35

Ill. App. 3d 1001, 1030, 343 N.E.2d 65.) The propriety of an award of damages for personal injuries is not subject to mathematical computation, nor may it be measured by comparison with verdicts in other cases. "Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions." *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453, 158 N.E.2d 63.

In the instant case, the jury was correctly instructed, and the record contains much evidence from which they could have concluded that the sum awarded was necessary to compensate plaintiff for his injuries. The evidence adduced at trial shows that plaintiff sustained massive brain injuries which have left him profoundly retarded and suffering from numerous related physical disabilities. The amount awarded cannot be considered excessive in light of the evidence presented at trial of the future needs of this child and the technology which will most probably become available in the future to aid him in living with his disabilities.

Defendants strongly urge this court to find error in the amount awarded to plaintiff on the basis of the jury's apparent belief that plaintiff's life expectancy is that of a normal person—63.3 years from the date of trial. Defendants argue that their evidence conclusively shows that plaintiff will live only into his mid-twenties. However, defendants' evidence as to plaintiff's life expectancy consisted of a study made of persons institutionalized in a California State facility beginning as far back as 1927. It clearly cannot be said that plaintiff in the instant case, living at home and receiving personal care provided by his parents, lives under the same conditions or is exposed to the same hazards as mentally retarded persons confined to a State hospital. The jury heard evidence concerning this study and was permitted to decide whether its findings should be applied to plaintiff in the instant case. In addition, plaintiff's medical experts testified that, given proper care, plaintiff can be expected to live a normal lifespan. Under these circumstances, we will not disturb the jury's verdict on the basis that an improper finding was made concerning plaintiff's life expectancy.

Careful scrutiny of the record in the instant case reveals that the jury's verdict was not so large as to indicate passion and prejudice. Plaintiff was awarded considerably less than his counsel requested of the jury in closing arguments. In view of the overwhelming evidence presented to the jury concerning the extent and permanency of the injury sustained by plaintiff, his disfigurement, disability, pain and suf-

fering, future medical and home care requirements, and his lost earning capacity, it cannot be said that the damages awarded were the result of passion or prejudice. We therefore affirm the judgment entered on the $8,126,711 verdict.

■ Defendants also contend that the trial court erred in awarding prejudgment interest on the nonpecuniary elements of plaintiff's damage award. The trial court ordered defendants to pay prejudgment interest on the $4,000,000 awarded for disability, disfigurement, pain and suffering from the date of plaintiff's injury, December 10, 1976, to May 29, 1984, the date of judgment in this case.

It is clear that Illinois statutes do not authorize prejudgment interest in tort cases. (*Gardner v. Geraghty* (1981), 98 Ill. App. 3d 10, 14, 423 N.E.2d 1321.) "Absent such statutory authority, the 'recovery of prejudgment interest in this state cannot be sustained ***.' " (98 Ill. App. 3d 10, 14.) We therefore vacate that portion of the judgment awarding prejudgment interest to plaintiff.

Affirmed in part and reversed in part.

HARTMAN and BILANDIC, JJ., concur.