ROBERT TIERNEY, Plaintiff-Appellee, v. COMMUNITY MEMORIAL GENERAL HOSPITAL, n/k/a La Grange Memorial Hospital, *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—92—2262

Opinion filed December 2, 1994.—Rehearing denied January 12, 1995.

Johnson & Bell, Ltd. (Thomas H. Fegan, of counsel), and Cassiday, Schade & Gloor (Rudolf G. Schade, of counsel), both of Chicago, for appellant Community Memorial General Hospital.

Stotis & Baird, of Chicago (Michael S. Baird, of counsel), for appellant Charles R. Rimpila.

Power, Rogers & Smith, of Chicago (Joseph A. Power and David A. Novoselsky, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

This is an appeal from a jury verdict against the above-named defendants in a medical malpractice and negligence case. Plaintiff, Robert Tierney, claimed that Dr. Charles Rimpila, an emergency room doctor, negligently failed to diagnose his medical condition and that the resulting delay in treatment caused him to have a stroke. Plaintiff also claimed Dr. Rimpila was the hospital's apparent agent and that the hospital was thereby liable for Dr. Rimpila's conduct. Finally, plaintiff alleged that two hospital employees negligently recorded his medical history and that this was also a proximate cause of his stroke.

Evidence at trial indicated that the plaintiff went to the emergency room on June 2, 1983. Plaintiff complained to the hospital registrar and a nurse of a swollen tongue. He was having trouble breathing and speaking and believed he was having an allergic reaction to Erythromycin, a drug prescribed by his regular physician, Dr. DeMange. At the time, plaintiff had a fever and was anemic. According to the plaintiff, he told the registrar and a nurse, as well as Dr. Rimpila, that he had a heart murmur before he was examined. No one recorded this fact on his chart. By the time Dr. Rimpila was able to examine plaintiff, the swelling in his tongue had gone down

and it was no longer a source of immediate concern. Dr. Rimpila consulted over the phone with Dr. DeMange and directed the plaintiff to see Dr. DeMange as soon as possible.

Plaintiff saw Dr. DeMange on the same day. Dr. DeMange had been treating plaintiff for some time and knew of plaintiff's fever, anemia and heart murmur. Plaintiff's fever continued to persist while under Dr. DeMange's care and, on the advice of friends, plaintiff went to see a new doctor on June 30, 1983. Based upon plaintiff's symptoms, this doctor diagnosed subacute bacterial endocarditis (SBE) and admitted plaintiff immediately to the hospital where he began what was to be an intensive four-week intravenous therapy. In the third week of his therapy, however, before he had finished treatment, he suffered a stroke. Plaintiff presented at trial the theory that he had contracted SBE well before his visit to the emergency room and that Dr. Rimpila's negligent failure to suspect and test him for SBE on June 2, 1983, delayed treatment, thereby proximately causing his injury. The jury determined liability against the defendants and awarded plaintiff $18,500,000 in compensation.

We begin by considering defendants' initial post-trial motions. In addition to a remittitur of the jury's $18.5 million award, defendants made motions seeking judgment notwithstanding the verdict (judgment *n.o.v.*) or, in the alternative, a new trial. The trial court denied both requests.

A motion for judgment *n.o.v.* should be entered by the trial court whenever all of the evidence, when viewed in the light most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In contrast, the trial court should grant a motion for a new trial whenever the jury's verdict is against the manifest weight of the evidence (*Stennis v. Rekkas* (1992), 233 Ill. App. 3d 813, 824, 599 N.E.2d 1059), or where it believes trial errors have been sufficiently serious and prejudicial to warrant such relief (see *Bartlett Bank & Trust Co. v. McJunkins* (1986), 147 Ill. App. 3d 52, 63, 497 N.E.2d 398). A verdict is said to be against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based on any of the evidence. *Stennis*, 233 Ill. App. 3d at 824; *Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1089, 560 N.E.2d 969.

■ In reviewing the trial court's decision to deny a motion for judgment *n.o.v.*, we must, like the trial court, view all of the evidence in the light most favorable to the opponent of the motion. (*Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 353-54, 603 N.E.2d 449.)

The same rule applies on review of the trial court's decision to deny a new trial. (*Hamrock v. Henry* (1991), 222 Ill. App. 3d 487, 492, 584 N.E.2d 204.) After reviewing the trial record with this in mind, we conclude that the trial court did not commit error in denying either defendants' motion for judgment *n.o.v.* or their motion for a new trial.

We first address Dr. Rimpila's argument that plaintiff violated Supreme Court Rule 220(d) (134 Ill. 3d R. 202(d)), and that this violation amounts to reversible error. At trial plaintiff offered the testimony of Dr. John Vyden on the issue of whether plaintiff's stroke was caused by Dr. Rimpila's failure to diagnose SBE. Prior to the start of the trial, Dr. Rimpila filed a motion seeking to preclude plaintiff from offering testimony that the delay in treatment—from June 2, 1983, to June 30, 1983—caused plaintiff's injuries. Defendant hospital joined in the motion. The motion was based upon the fact that deposition testimony of Dr. Vyden, plaintiff's only causation expert, indicated he had not formulated an opinion on the causation issue. The trial judge denied the motion. During trial defendant's counsel again objected to Dr. Vyden's testimony and the court over-ruled the objection.

Supreme Court Rule 220 attempts to establish a uniform framework for the timely revelation of the identity of expert witnesses and the subject matter of their expected testimony. Paragraph (d) of the rule limits the permissible scope of an expert's testimony to those opinions expressed in response to discovery.

On January 28, 1991, plaintiff filed its answers to defendants' supplemental interrogatories. In this document, plaintiff's counsel disclosed the name and address of Dr. Vyden. The interrogatory asks the plaintiff to state the subject matter on which his experts would testify. Plaintiff's attorney answered that Dr. Vyden would testify as to "the negligence of the physicians and health care practitioners in failing to properly exam [*sic*], test and diagnose bacterial endocarditis." Counsel also stated that Dr. Vyden would testify that, with a proper history, examination and a recording of results, plaintiff would have received test results which would have "confirmed the proper diagnosis of bacterial endocarditis and would have led to a good recovery."

In his deposition taken on June 13, 1991, Dr. Vyden indicated that he had not yet formed an opinion on the issue of whether plaintiff would have suffered a stroke had he been treated with intravenous antibiotics soon after his visit to the emergency room on June 2, 1983. Prior to trial both defendants motioned the court to preclude Dr. Vyden from testifying regarding causation. Dr. Rimp-

ila's counsel argued that Dr. Vyden's testimony, that the longer the disease is allowed to progress the greater the chance of harm, was simply insufficient to establish that Dr. Rimpila's failure to diagnose SBE was a proximate cause of plaintiff's injury. The trial court denied the motion.

At trial, on November 20, 1991, Dr. Vyden was asked for his opinion about the role that Dr. Rimpila's negligence played in the plaintiff's stroke. Dr. Vyden stated that, had it not been for the negligence of Dr. Rimpila, the stroke would not have occurred.

There are many decisions involving Rule 220 wherein an expert's late or surprise testimony: (1) is permitted to his opponent's prejudice, (2) is refused to the detriment of the litigant offering them, or (3) results in the trial being continued. (See 134 Ill. 2d R. 220, Committee Comments (and cases cited therein).) Other cases have held that the allowance or denial of such testimony produces reversible error and the cause must be retried. See *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 588 N.E.2d 1193; *Brown v. Highland Park Hospital* (1979), 69 Ill. App. 3d 769, 387 N.E.2d 1041.

As they did before the trial court, defendants point out that it is incumbent upon plaintiff to offer expert testimony which proximately connects his negligence to plaintiff's injuries. (*Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098-99, 517 N.E.2d 295.) Testimony that treatment would have increased the plaintiff's chances for recovery has been held to be insufficient. (*Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 1034-38, 549 N.E.2d 778 (discussing rule governing cases in which plaintiff claims defendant's negligence decreased his chances of recovery).) They also note that Rule 220 requires the nature of the expert's testimony be disclosed to them well before trial so that they can rely upon this opinion in their trial preparations. (See *Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 540 N.E.2d 770.) Dr. Rimpila argues that he was figuratively "ambushed" by Dr. Vyden's causation testimony. He claims that without the admission of Dr. Vyden's opinion testimony, the trial court would have been required to direct a verdict in his favor.

We agree that plaintiff's counsel violated Rule 220 in failing to update Dr. Vyden's deposition testimony. Rule 220 requires a party to update the deposition testimony of its expert should that expert wish to express opinions beyond those originally disclosed. (*Zajac v. St. Mary of Nazareth Hospital Center* (1991), 212 Ill. App. 3d 779, 794, 571 N.E.2d 840.) Nonetheless, the imposition of discovery sanctions under Rule 220 is a matter within the sound discretion of the trial court and will not be interfered with absent a clear showing of abuse.

See *Malone v. Papesh* (1994), 255 Ill. App. 3d 910, 913, 627 N.E.2d 1211; *Fischer v. G&S Builders* (1986), 147 Ill. App. 3d 168, 172, 497 N.E.2d 1022.

In determining whether a witness should be precluded from testifying following a violation of Rule 220, six factors must be considered: (1) surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the witnesses' testimony; (4) the diligence of the adverse party; (5) whether objection to the witnesses' testimony was timely; and (6) good faith of the party calling the witness. (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 368-72, 459 N.E.2d 940.) After considering these factors, we do not believe the trial court's failure to preclude Dr. Vyden from testifying on the causation issue was an abuse of discretion. We note that the defendants had been told in January, well before trial, that Dr. Vyden would offer a causation opinion against them. Defendants specifically knew that Dr. Vyden had been retained to formulate such an opinion. (*Cf. Poole v. City of Rolling Meadows* (1993), 253 Ill. App. 3d 154, 627 N.E.2d 1112 (trial court did not abuse discretion in allowing expert to testify when opponent had reason to know of the nature of expert's testimony).) Dr. Vyden offered no difficult-to-understand or exotic theories of how Dr. Rimpila's failure to diagnose SBE caused the plaintiff's stroke. We also note that the hospital offered its own expert on causation, Dr. Caesar DeLeo, who indicated Dr. Rimpila's failure to diagnose SBE was not a cause of plaintiff's injuries. Clearly defendants knew that causation would be an issue at trial and were prepared to counter any testimony that might be offered by Dr. Vyden. The trial court's decision in this matter was not unreasonable and was not error.

The hospital next argues that the conduct of the hospital's nurse and a registrar who interviewed the plaintiff when he first arrived at the hospital could not be a proximate cause of plaintiff's injuries because the plaintiff himself testified that he told Dr. Rimpila that he had a heart murmur. They argue that because the nurse's and registrar's only duty was to convey information to Dr. Rimpila regarding the plaintiff's condition, the hospital cannot be held liable. We believe the hospital's argument distorts the evidence.

Dr. Rimpila indicated that he was not aware during his diagnosis of plaintiff's condition that the plaintiff had a heart murmur—even though plaintiff testified that he told Dr. Rimpila of his murmur. Under the *Pedrick* rule, which the defendants concede should be applied, *all* the evidence must be viewed in the light most favorable to the plaintiff. (*Pedrick*, 37 Ill. 2d at 510.) Here, it is entirely possible for the jury to have concluded that Dr. Rimpila failed to hear or

understand plaintiff's statements regarding his murmur and that, had the information been properly charted by the nurse and registrar, he would have known of plaintiff's true condition and made a proper diagnosis. Each of the doctors who testified, including Dr. Rimpila, explained that a combination of heart murmur and fever suggests SBE. Indeed, Dr. Rimpila himself suggested that, had he known of plaintiff's murmur at the time of examining plaintiff, he might have diagnosed the disease.

Defendants also argue that there should be no duty of an emergency room doctor to "act as an attending physician." They argue that public policy should limit the exposure of emergency room doctors and staff to liability for the patient's "urgent presenting complaint," not hidden illnesses such as SBE. They claim that the evidence conclusively established that Dr. Rimpila complied with the appropriate standard of care because he did not release plaintiff from the emergency room until after his swollen tongue had reduced in size.

■ We first note that this argument was not presented in defendant's post-trial motion. It is therefore waived. See *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-49, 415 N.E.2d 337.

In any event, we do not believe the hospital offers a persuasive argument on this point. The appropriate standard of care in a medical malpractice case is determined by the trier of fact after considering expert testimony on the issue. Expert testimony is required to support a charge of medical malpractice because the assessment of the alleged negligence typically requires knowledge, skill, or training in a technical area outside the comprehension of lay people. *Schindel v. Albany Medical Corp.* (1993), 252 Ill. App. 3d 389, 625 N.E.2d 114.

The hospital draws support for its argument principally by relying upon the testimony of its own expert, who was not critical of Dr. Rimpila's care. Defendants consistently advance the position that Dr. Rimpila cannot be held liable because he was not the primary treating physician and should not have a duty to treat plaintiff's illness. In this argument, however, defendants mischaracterize plaintiff's theory of the case. Plaintiff's theory was not that Dr. Rimpila failed to treat plaintiff for SBE but, rather, that the appropriate standard of care required him to recognize the possibility of SBE and to take the necessary steps so as to allow diagnosis of the illness.

While emergency room physicians would, no doubt, prefer the limited standard of care suggested by the defendants, defendants offer no legal support as to why such a standard is any more appropriate than the one testified to by plaintiff's expert. If public

policy requires emergency room physicians and staff to have applied to them a special standard of care, different than the one testified to at trial, we believe it best to leave the creation of such a standard to the legislature or to the medical profession in general.

The defendant hospital next complains of the trial court's refusal to strike the testimony of plaintiff's only causation expert, Dr. Vyden. The testimony complained of by the defendants is as follows:

> "Q. Do you have an opinion based upon a reasonable degree of certainty as to whether the negligence of Dr. Rimpila as has been testified to in this courtroom was a cause of Mr. Tierney's injuries?
>
> * * *
>
> A. I have such an opinion.
> Q. Can you tell us what your opinion is?
> A. I believe that had it not been for the negligence of this particular doctor that the stroke would not have occurred."

The hospital claims that Dr. Vyden's testimony should have been struck because Dr. Vyden could have had no knowledge of the negligence *that had been testified to in the courtroom*. On cross-examination he readily admitted what must have been obvious to the jurors—he had not been in the courtroom during any of the previous testimony regarding Dr. Rimpila's alleged negligence.

Plaintiff responds by noting that Federal Rule of Evidence 703, which has been adopted in Illinois (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 195, 417 N.E.2d 1322), specifically allows a testifying expert to base an opinion on information made known to him or her before trial. Federal Rule 705, also adopted in Illinois (*Wilson*, 84 Ill. 2d at 195), places the burden on an adverse party to elicit the basis underlying an expert's opinion. Plaintiff argues that it was incumbent upon the defendants to demonstrate that Dr. Vyden did not have a sufficient factual basis to render an opinion at trial. He claims that they did not do so and that the trial court's decision to allow Dr. Vyden's testimony to stand was not error.

■ We agree with the plaintiff on this issue and find the cases relied upon by the defendants to be unpersuasive. Where an expert is affirmatively shown to be unfamiliar with the facts upon which he has rendered an opinion, his testimony may be stricken and the trial court's failure to do so may be reversible error in the appropriate case. (See, *e.g., Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030; *McCormick v. Maplehurst Winter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 519 N.E.2d 496.) In this case, however, the record fails to support the conclusion that Dr. Vyden was unfamiliar with the underlying facts. It instead merely demonstrates that Dr. Vyden's causation opinion was offered in a way that was unre-

sponsive to the question that was put to him. The fact that Dr. Vyden was shown by defendants not to have based his opinion on trial testimony hardly establishes that he was confused or unfamiliar with the underlying facts of the case. The trial court's decision not to strike Dr. Vyden's causation testimony was not error.

Defendants next argue that the trial court committed error in allowing the jury to consider the question of whether Dr. Rimpila was negligent for failing to hear plaintiff's heart murmur. They complain that the plaintiff offered no competent medical testimony that Dr. Rimpila's failure to hear the murmur was a deviation from the appropriate standard of care. Our review of the record convinces us, however, that testimony from the various physicians who testified was sufficient for the jury to have properly concluded that Dr. Rimpila was under a duty to hear plaintiff's murmur during his examination.

Dr. DeMange testified that, when he listened to plaintiff's heart, the murmur was "quite noticeable." He said that he would have been able to hear the murmur without using a stethoscope by putting an ear to plaintiff's chest. Dr. DeMange testified that the nature of the murmur did not change from one visit to the next. He said he would "probably expect a reasonably well qualified doctor to be able to hear a murmur any time he put a stethoscope to it including June 2." Dr. Vyden testified that a heart rate of 108, which was consistent with the plaintiff's heart rate when he visited the hospital on June 2, 1983, would not affect the ability of a noncardiologist to hear the murmur. Dr. Vyden also testified that the failure to diagnose SBE, often indicated by the existence of a combination of a fever and a heart murmur, would inevitably lead to the death of the patient.

■ Dr. Rimpila's own testimony in many ways complemented the testimony of these physicians. Dr. Rimpila indicated that he knew plaintiff had a fever during his examination but did not know its cause. He also conceded that a doctor should consider SBE when presented with a patient with a fever of unknown origins and a heart murmur. Dr. Rimpila admitted that plaintiff likely presented a heart murmur on June 2 and that he failed to hear this murmur, even though he listened to plaintiff's heart with a stethoscope. While plaintiff's expert did not specifically say that the appropriate standard of care required Dr. Rimpila to hear the plaintiff's murmur, it is inconceivable that the correct standard of care would not have required him to hear plaintiff's "quite noticeable" defect once he had determined it important to listen to the plaintiff's heart. This is particularly so in light of the apparent fatal nature of SBE. We conclude that the appropriate standard of care was adequately established.

Defendant hospital next complains about comments made by plaintiff's counsel in closing argument. We begin by noting that, as a general matter, improper comments at closing do not constitute reversible error unless the defendant is shown to have been substantially prejudiced thereby. (*Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 893, 452 N.E.2d 572, citing *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) In closing argument to the jury, counsel is allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. The question of whether counsel has stayed within these bounds is generally left to the sound discretion of the trial court. (*First National Bank v. Chrysler Realty Corp.* (1988), 168 Ill. App. 3d 784, 795, 522 N.E.2d 1298.) The trial court's determination in such matters will not be reversed absent a clear abuse of that discretion. (*Heeg v. Jewel Cos.* (1992), 232 Ill. App. 3d 75, 596 N.E.2d 765.) Although improper closing arguments may warrant a new trial, we will not grant a new trial unless the arguments were clearly improper, prejudicial and denied the complaining party a fair trial when that trial is viewed in its entirety. *Stennis*, 233 Ill. App. 3d at 829-30.

Defendants complain of the following argument:

> "They talk about Dr. Vyden, our expert. Their expert, Dr. DeLeo wrote, what, two articles on OB-Gyn. They know darn well that local doctors don't testify against local doctors."

Following this statement, the trial court cautioned counsel to refrain from personal attacks and instructed the jury to base its decision on the evidence presented. The trial court refused, however, to grant the hospital's request to strike counsel's comments.

■ We agree with the defendants that counsel's comments, quoted above, were improper and should have been stricken by the trial court. Counsel's statement that "doctors don't testify against local doctors" was unsupported by the record and was therefore outside the proper scope of fair closing argument. In this case, however, there is nothing to indicate that the failure to strike these arguments worked significant prejudice against the defendants. For this reason, we find counsel's comments to have been harmless error.

■ The hospital also complains about the following argument made by plaintiff's counsel:

> "We ask that you return a verdict against all the defendants and specifically Dr. Rimpila should not be left out there by himself.
>
> * * *
>
> Dr. Rimpila should not be out there standing by his lonesome. This is a hospital. This is a team effort. They all failed him and

your verdict should be against Dr. Rimpila and the hospital and the physicians in this case."

During his trial testimony Dr. Rimpila admitted that the hospital staff worked as a team in the emergency room. The hospital argues, somewhat cryptically, that "[t]here is no proper reason for the jury to be concerned about which defendant it finds liable other than legal liability itself." In this case, however, the jury was charged with the task of determining which defendants were liable and which were not. As plaintiff suggests, it was entirely proper for counsel to argue that all the defendants should be treated the same if all of the defendants are liable for the conduct at issue. We therefore find these arguments not to have been improper.

■ Defendant hospital next argues that the trial court committed error in instructing the jury, after deliberations had begun, that a release signed by the plaintiff before being examined at the emergency room was against public policy. Because the hospital has failed to make a proper record regarding the instruction, however, we find ourselves unable to properly address the issue. We must conclude, therefore, that the failure of the hospital to make a proper record has waived the issue.

■ The hospital next complains about the "apparent agency" theory submitted to the jury and argues that the apparent agency theory of vicarious liability has been discredited in Illinois. Recently, however, in *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 622 N.E.2d 788, the Illinois Supreme Court determined that a hospital may be made vicariously liable not only for the authority which it actually gives to its agents, but also by the authority which it appears to give. The filing of the *Gilbert* opinion by the supreme court settles the issues now raised by the plaintiff.

■ The hospital complains of additional remarks made in plaintiff's closing argument to the jury. During argument counsel for the plaintiff stated with regard to the apparent agency theory: "Dr. Rimpila in answer to the complaint admits apparent agency. Admits it." In fact, Dr. Rimpila did not admit apparent agency in his answer to the complaint. Indeed, as the hospital points out, even had Dr. Rimpila admitted he was the hospital's apparent agent, such an admission would not be relevant to the jury's consideration of the issue. It is not the conduct or words of the apparent *agent* that create an apparent agency, but rather, the words or conduct of the apparent *principal*. (See *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 440, 454 N.E.2d 754 ("The law is well settled in Illinois that an agent cannot confer power on himself and his agency or authority cannot be established by showing what he said or did").) We note

with regard to this issue, however, that counsel did not make a prompt objection to counsel's comments. We also note that the court properly instructed the jury that it was to consider only properly admitted evidence in reaching its verdict, and that arguments of counsel were not evidence. The jury is presumed to have followed the court's instructions. (*Richardson v. Marsh* (1987), 481 U.S. 200, 95 L. Ed. 2d 176, 107 S. Ct. 1702.) While we agree with the defendant hospital that the argument of counsel was unsupported by the trial evidence and improper, we believe this issue was waived by counsel's late objection and, in any event, was not the type of trial error which would require reversal.

Defendants' next arguments concern the amount of the jury's award with regard to lost future earnings and the cost of future attendant care. The jury's verdict totalled $18,500,000, $4,500,000 of which was attributed to the present value of anticipated lost future earnings and the present value of the cost of anticipated attendant care. The defendants claim on appeal that the jury's award with regard to these items is unsupported by the evidence. They note that the plaintiff's own experts testified that the present value of the plaintiff's lost earnings, when combined with the present value of the cost of his future care needs, totalled only $2,261,859. There was no other testimony on these issues.

■ Because our review of the record supports the defendants' claims and provides no basis to support the jury's award with regard to the plaintiff's lost earnings and future attendant care needs, we must find in favor of the defendants on this issue. We therefore modify the judgment by reducing it by $2,238,141 pursuant to our powers under Supreme Court Rule 366(a) (134 Ill. 2d R. 366(a)).

Defendants next complain of the overall size of the jury's award. They claim that the jury's award is excessive and should be vacated. Current Illinois law is clear, however, that the determination of damages in a civil case such as this one is a matter for the jury's determination. (*Baier v. Bostitch* (1993), 243 Ill. App. 3d 195, 204, 611 N.E.2d 1103.) In determining whether an award is excessive, the test to be used is "whether it [the award] falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience." *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 334-35, 481 N.E.2d 957.

Defendants offer any number of reasons why the jury's award of $18,500,000 is excessive and should shock the judicial conscience. For example, at the time, plaintiff's award was the largest medical malpractice award in Illinois history. The trial judge, who was in the best position to determine whether the award was excessive, indicated

he personally believed the award was too high. In addition, because a significant portion of the jury's award was unsupported by the evidence, as we have discussed above, defendants suggest that it is likely that much of the remaining award was also improperly calculated.

Among the factors we must consider in assessing whether the verdict is excessive are: (1) the permanency and extent of the injuries suffered; (2) the plaintiff's age; (3) the possibility of deterioration in the future; (4) the medical expenses incurred; (5) past and future lost wages; and (6) any restrictions that the injury may have placed on the daily activities of the plaintiff. (*Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946; *Dillon v. U.S. Steel Corp.* (1987), 159 Ill. App. 3d 186, 511 N.E.2d 1349.) We also consider the ratio of special damages to the overall award. *Lapidus v. Hahn* (1983), 115 Ill. App. 3d 795, 450 N.E.2d 824.

■ The hospital notes that the plaintiff is still capable of living on his own; he is physically able to drive a car; he is able to walk unassisted. Plaintiff is working on a master's degree in special education and his mind remains sharp. As the defendants point out, and as must be conceded, $18,500,000 represents a tremendous amount of financial compensation. Yet it cannot be denied that plaintiff's injuries are, to understate the issue, substantial. His suffering is also unique and the record indicates that he will have a particularly difficult time adjusting to his new disabilities. While the issue is a close one, we are simply unable to conclude that the jury's award in this case rises to the level requiring us to set it aside.

■ The hospital argues that the time has come for Illinois courts to abandon the "shocks the judicial conscience" test and to replace it with the "rational relationship" test sometimes used by Illinois courts to determine whether a jury's verdict is too low. (See, *e.g., Hollis v. R. Latoria Construction Co.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4; *Newbrough v. Lockwood Dairy* (1992), 223 Ill. App. 3d 665, 669, 585 N.E.2d 1097.) It concedes, however, that recent opinions have focused upon the "shocks the judicial conscience" standard for cases where the issue presented is whether the verdict is excessive. (See, *e.g., Salo v. Singhurse* (1989), 181 Ill. App. 3d 641, 537 N.E.2d 339; *Long v. Yellow Cab Co.* (1985), 137 Ill. App. 3d 324, 484 N.E.2d 830; *Altszyler v. Horizon House Condominium Association* (1987), 175 Ill. App. 3d 93, 529 N.E.2d 704, *appeal allowed* (1988), 123 Ill. 2d 555, 535 N.E.2d 398.) After considering the hospital's arguments, we fail to see how the "shocks the judicial conscience" test differs in significance from the "rational relationship" test or why the hospital believes the "rational relationship" test would be more desirable or precise. Both

tests require us to judge whether the plaintiff's suffering is inconsistent with the trial court's award. Suffice it to say that we believe application of either test to the facts of this case would produce the same result.

■ With regard to defendants' arguments that the jury's verdict should be compared to other similar awards and thereby found to be excessive, this is simply not the law in Illinois. (*Nicholson v. St. Anne Lanes, Inc.* (1985), 136 Ill. App. 3d 664, 483 N.E.2d 291 (declining to use comparison of other awards); *Northern Trust Co.*, 135 Ill. App. 3d at 335 (verdict may not be measured by comparison with verdicts in other cases); *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946 (comparison to other awards not often helpful); *Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 365 N.E.2d 1065 (reference to other awards of doubtful relevance).) It is not within our purview to establish a new standard of review for such cases when the clear weight of Illinois authority has been to reject the "comparison" concept. We have not, therefore, considered other jury verdicts in making our determination.

For the foregoing reasons, the judgment of the circuit court of Cook County is modified and, as modified, is affirmed.

Affirmed as modified.

EGAN, P.J, and RAKOWSKI, J., concur.