BRITTANY K. BARKEI, a Minor, by Kathleen Barkei, her Mother and Next Friend, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. DELNOR HOSPITAL, Defendant-Appellee and Cross-Appellant.

Second District No. 2—89—1317

Opinion filed December 27, 1990.

Robert A. Clifford and Keith A. Hebeisen, both of Robert A. Clifford & Associates, of Chicago, and Thomas K. Prindable, of Thomas K. Prindable & Associates, of Batavia (Robert P. Sheridan, of counsel), for appellants.

Henry J. Burt, Jr., of Rathje, Woodward, Dyer & Burt, and Francis D. Morrissey and Karen Kies DeGrand, both of Baker & McKenzie, both of Chicago (Tracy D. Kasson, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The instant medical malpractice action was filed on behalf of plaintiff Brittany K. Barkei (Brittany), a minor, by her parents, Randall and Kathleen Barkei (the Barkeis), each as next friend, to recover for injuries Brittany sustained shortly after her birth. The Barkeis also sought, individually, recovery for Brittany's medical expenses and damages for the loss of her society. Named as defendants were Dr. John Lamiot, Dr. Charles Taylor, Drs. Lamiot-Taylor, S.C. (all hereinafter referred to as Dr. Lamiot) and Delnor Hospital (Delnor). Brittany and the Barkeis proceeded to a jury trial against Delnor alone after they both reached pretrial settlements with Dr. Lamiot. The jury returned a verdict in favor of Brittany and the Barkeis.

Delnor appealed that verdict, and this court affirmed the award in part but reversed that portion of the award against Delnor based on loss of society. (*Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 531 N.E.2d 413.) After that appeal, Delnor sought to set off against the judgment the amounts paid to Brittany and the Barkeis in the prior settlements with Dr. Lamiot. The trial court ordered that the amount of Brittany's prior settlement with Dr. Lamiot would be set off in satisfaction of the judgment, but it refused to set off the amount of the Barkeis' prior settlement of their individual claims against Dr. Lamiot.

Brittany now appeals from the order granting setoff of her settlement with Dr. Lamiot, and Delnor cross-appeals from the trial court's refusal to also set off the amount of the Barkeis' settlement with Dr. Lamiot. Three issues are presented on appeal: (1) whether the trial court had jurisdiction to enter the order of setoff; (2) whether Delnor waived its right to setoff by not pursuing it until after the conclusion of the first appeal; and (3) whether the trial court erred in refusing to set off against the judgment the amount of the Barkeis' prior settlement with Dr. Lamiot. We must also resolve Delnor's motion, which

was ordered taken with the case, to strike certain statements in Brittany's reply brief.

The resolution of this appeal does not require detailed treatment of the facts underlying the original action filed by Brittany and the Barkeis. Brittany was born at Delnor Hospital on January 1, 1978, with Dr. Lamiot performing the delivery. Within a few days after her birth, doctors discovered signs of injuries, including trauma to Brittany's head and injury to her spinal cord.

The instant action was commenced in 1981, and a nine-count amended complaint was filed on March 5, 1987. All nine counts were based on an underlying allegation of negligence on the part of Delnor and Dr. Lamiot. Those counts of the complaint seeking to establish negligence under the doctrine of *res ipsa loquitur* specified that Brittany had incurred "[a]n injury" which "ordinarily does not occur in the absence of negligence." The injuries alleged in the counts seeking recovery from Delnor are identical to the injuries alleged in the corresponding counts against Dr. Lamiot. The Barkeis sought recovery individually pursuant to section 15 of "An Act to revise the law in relation to husband and wife" (the Family Expense Act) (Ill. Rev. Stat. 1987, ch. 40, par. 1015) and also sought damages for the loss of Brittany's society.

On April 8, 1987, Brittany filed a motion seeking court approval of her $1 million settlement with Dr. Lamiot. Attached to the motion was a document captioned, "FUTURE CARE NEEDS ASSESSMENT," which estimated Brittany's future medical expenses up to age 18 at $73,527.83. The court approved the settlement. The record also reveals a motion filed by the Barkeis seeking court approval of a $150,000 settlement of their claims against Dr. Lamiot. The motion indicated that the claims settled were those arising out of the Family Expense Act and the "body of established Illinois case law recognizing a parent's cause of action for loss of society and companionship of a nonfatally injured minor child." A notation on the motion, apparently made by the trial court, indicates that no order was issued on the motion because none was needed.

Plaintiffs filed a four-count second amended complaint on April 13, 1987, naming Delnor as the sole defendant. All counts sought recovery based on Delnor's alleged negligence in causing a spinal cord injury or brain damage to Brittany. Brittany sought recovery under counts I and II for her injuries, and the Barkeis sought recovery under counts III and IV pursuant to the Family Expense Act and for loss of society. Counts I and III sought to establish negligence on the part of Delnor under the doctrine of *res ipsa loquitur*.

The cause subsequently proceeded to a jury trial against Delnor, the only remaining defendant. The jury returned a verdict awarding plaintiffs a total of $2,089,886.92, with specific allocations for the following amounts:

| Brittany Barkei | |
|---|---|
| Disfigurement | $ 400,000.00 |
| Disability | 373,000.00 |
| Pain and suffering experienced | 50,000.00 |
| Future pain and suffering | 100,000.00 |
| Future medical expenses to be incurred after age 18 | 750,000.00 |
| Future earnings lost after age 18 | $ 250,000.00 |
| TOTAL | $1,923,000.00 |
| Randall and Kathleen Barkei | |
| Loss of Society | $ 30,000.00 |
| Medical expenses incurred | 62,792.92 |
| Future medical expenses up to age 18 | $ 74,094.00 |
| TOTAL | $166,886.92 |

After judgment was entered on the verdict, Delnor appealed. In an opinion issued on November 29, 1988, this court affirmed the judgment against Delnor except for the $30,000 awarded to the Barkeis for loss of society, the latter portion of the decision being based on the supreme court's holding in *Dralle v. Ruder* (1988), 124 Ill. 2d 61, 529 N.E.2d 209, that a parent may not recover for loss of society resulting from nonfatal injuries to a minor child. The opinion issued in the prior appeal noted that a portion of Delnor's brief labeled "Ethical Consideration" made mention of certain facts pertaining to the settlements with Dr. Lamiot. Although Delnor had suggested that the appeal might be moot, the court found the inclusion of this issue in Delnor's brief to be inappropriate and afforded it no consideration. (*Barkei*, 176 Ill. App. 3d at 697, 531 N.E.2d at 423.) The court remanded the cause to the circuit court with directions to enter a corrected judgment. *Barkei*, 176 Ill. App. 3d at 696, 531 N.E.2d at 423.

The Illinois Supreme Court denied leave to appeal (125 Ill. 2d 563), and this court issued its mandate on June 1, 1989. The cause was then reinstated in the trial court. The record indicates that, on June 29, 1989, Delnor tendered $1,088,922.74 plus plaintiffs' costs in full satisfaction of the judgment. This amount reflected the amount of the judgment less the $1,150,000 settlement with Dr. Lamiot and the $30,000 award for loss of society, plus interest. Plaintiffs rejected the tender, and Delnor then filed a motion seeking leave to deposit the

sum of $1,088,922.74 plus costs in full satisfaction of the judgment.

Plaintiffs filed an emergency motion seeking a ruling which would allow Delnor to pay $1,088,922.74 to plaintiffs in only partial satisfaction of the judgment, with the total amount due from Delnor to be subsequently determined by the court. The trial court granted this emergency motion and set a date for a hearing on Delnor's motion seeking an order construing the amount stated above as full satisfaction of the judgment. Delnor argued that it was entitled to set off against the judgment as to both the $1 million settlement between Brittany and Dr. Lamiot and the $150,000 settlement between the Barkeis and Dr. Lamiot in order to prevent a double recovery. Plaintiffs did not argue that Delnor was not originally entitled to the set-offs it sought; instead, plaintiffs argued that Delnor had waived any right to setoff by not pursuing it in the earlier proceedings. They further argued that the trial court was without "jurisdiction to do anything other than execute the judgment."

The parties appeared before the trial court on October 6, 1989, to argue the issue of setoff. The court reserved its ruling on the matter and indicated that it would advise the parties of its decision by mail. A letter from the trial court judge to the parties was filed on October 12, 1989. In the letter, the court stated that it would grant Delnor's motion for satisfaction of judgment after further hearing on the exact amount of the setoff.

The parties again appeared before the court on October 20, at which time the court clarified that, although it would allow Brittany's $1 million settlement with Dr. Lamiot to be set off against the judgment, it would not set off the Barkeis' $150,000 settlement with Dr. Lamiot. The court noted that it was "not yet able to ascertain what, if any portion of the $150,000 already received by the parents was reimbursement for the family expense." The court inquired whether either party wished to offer any further evidence or argument on the issue. Plaintiffs elected to stand on the record; Delnor also elected to stand "on what's submitted in the record as to family expense—as to expenses incurred" and argued "that at least that amount should be deducted." The court then stated:

> "THE COURT: Hearing nothing further in the way of evidence of any type to be offered on the issue and having made this hearing available to the parties, the Court then must base its rulings on what is properly before the Court and in the record; and the Court has considered the applicable law and the arguments of Counsel and notes and finds for the record that the Court would have to speculate and guess about how much

[of the Barkeis' settlement] was attributable to family expense, if anything.

It's impossible for the Court to ascertain whether all except one penny, if that, was attributable to the loss of society, or nothing. Since the Court is not allowed to guess, the motion as to the $150,000 being the subject of a set-off is denied."

On appeal, Brittany first appears to argue that the trial court did not have jurisdiction to enter an order for setoff because more than 30 days had passed since the entry of final judgment. Brittany also contends that the circuit court's jurisdiction after remand was limited to the directive of the appellate court's mandate, namely, to correct the judgment to reflect the appellate court's reversal of the award to the Barkeis for loss of society.

■ This court recently addressed this issue in *Klier v. Siegel* (1990), 200 Ill. App. 3d 121, 558 N.E.2d 583. In *Klier*, the defendants successfully petitioned the trial court to enter an order for satisfaction of judgment based on setoff more than 30 days after the entry of the judgment. On appeal, this court held that the court had jurisdiction to do so. The court reasoned that the defendants' petition did not challenge the judgment *per se*, but "was in the nature of an enforcement or supplementary proceeding invoking the continuing power of the court to control its own process." (*Klier*, 200 Ill. App. 3d at 125, 558 N.E.2d at 587.) The court concluded that "where there is a single and indivisible injury caused by the negligence of defendants, the damages are inseparable, and any amounts received from any of the defendants must be deducted from the total damages sustained." (*Klier*, 200 Ill. App. 3d at 127, 558 N.E.2d at 587-88.) We also note that nothing in the prior mandate issued by this court after the prior appeal in this cause precluded the trial court from entering an order of setoff under its continuing authority over the enforcement of the judgment.

■ In her reply brief, Brittany argues that there is no threat of double recovery here because she did not suffer a single, indivisible injury but separate injuries. Delnor has filed a motion with this court to strike this argument from Brittany's brief because she should not be allowed to raise it for the first time on appeal in her reply brief. However, Delnor argued in its appellee's brief that Brittany was attempting to achieve a double recovery, a position which presupposes that the settlement with Dr. Lamiot and the verdict against Delnor were intended to compensate Brittany for the same injuries. Since the arguments at issue in Brittany's reply brief were made in response to Delnor's double-recovery argument, we deny Delnor's motion to strike.

these portions of Brittany's brief. See Supreme Court Rule 341(g) (113 Ill. 2d R. 341(g)); *In re Application of Cook County Treasurer & Ex-Officio County Collector* (1985), 135 Ill. App. 3d 901, 908, 482 N.E.2d 361.

■ Delnor also contends that this argument was not raised in the circuit court and is waived for purposes of appeal. We agree. Delnor raised the question of double recovery below at the hearing regarding setoff, but Brittany never responded to this argument by contending that she suffered separate injuries at the hands of the defendants originally named in her complaint. Brittany's position below was that the trial court did not have jurisdiction to enter a setoff and that Delnor had waived its right to seek a setoff. Brittany did not address the issue of whether Delnor was substantively entitled to a setoff, and she may not do so now. Matters not presented to or ruled on by the trial court may not be raised for the first time on appeal. *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 229, 499 N.E.2d 1381.

■ Moreover, the theory of Brittany's case below was not based on separate injuries. Brittany's first amended complaint alleged that she suffered "[a]n injury" (emphasis added) caused by all the defendants. Although the *res ipsa loquitur* counts demonstrate that Brittany was unable to pinpoint precisely when and at whose hands her injury occurred, she alleged that she suffered *an* injury during the days she was under the care of the defendants. The evidence and arguments presented at trial by Brittany's counsel also reveal no attempt to apportion certain injuries attributable to Dr. Lamiot as opposed to those attributable to Delnor. Thus, Brittany's argument that she suffered separate and distinct injuries. represents an attempt to change the theory of recovery advanced at trial. The theory on which a case is tried in the lower court cannot be changed on review. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.

■ Accordingly, we hold that Brittany's argument suggesting that she suffered separate injuries at the hands of separate defendants is waived. As the injuries for which Brittany sought recovery are single and indivisible, *Klier* applies here. Thus, the trial court had jurisdiction to enter a setoff in satisfaction of the judgment against Delnor to prevent Brittany from achieving a double recovery. Setoff was appropriate even though Dr. Lamiot was not adjudged a tortfeasor so long as it appears the settlement was to extinguish his potential liability for the same injuries for which recovery was sought from Delnor. *Nguyen v. Tilwalli* (1986), 144 Ill. App. 3d 968, 972-73, 495 N.E.2d 630.

Brittany's principal argument is that, even if the circuit court had

jurisdiction to enter an order for setoff, Delnor waived its right to seek such an order by failing to do so until after the conclusion of the first appeal in this cause.

■ Even though it did not involve a post-appeal effort to obtain setoff, the *Klier* case provides the answer to this argument. Noting Illinois' strong public policy against double recovery, the court in *Klier* concluded that a motion for an order of satisfaction based on setoff need not be made within 30 days of judgment or within the time period specified by section 2—1401 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). The court stated that such a motion is "in the nature of a supplemental enforcement proceeding; it is governed, if at all, by the time constraints applicable to such a proceeding." (*Klier*, 200 Ill. App. 3d at 128, 558 N.E.2d at 588-89.) The time limit on enforcement of judgments is generally seven years from the entry thereof. Ill. Rev. Stat. 1989, ch. 110, par. 12—108(a); see also *Russell v. Klein* (1974), 58 Ill. 2d 220, 226, 317 N.E.2d 556 (execution of a judgment may issue within seven years of its rendition, so a judgment debtor's relief from judgment based on satisfaction is not limited by the time constraints applicable to petitions attacking the judgment).

■ Brittany notes that section 2—608(a) of the Code provides, in pertinent part, as follows:

> "§2—608. Counterclaims. (a) Any *claim* by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of *setoff*, recoupment, cross claim or otherwise, \*\*\* may be pleaded as a cross claim in any action and when so pleaded shall be called a counterclaim." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 2—608(a).)

Brittany further notes the holding in *Vieweg v. Friedman* (1988), 173 Ill. App. 3d 471, 474, 526 N.E.2d 364, that section 2—608, though permissive, "does not eliminate the need to include a request for setoff as part of a defendant's pleadings." Thus, Brittany argues, Delnor was required under section 2—608 to request setoff in its pleadings in order to be afforded that relief.

■ Although the holding in *Vieweg* accurately states the law, the type of "setoff" referred to therein is not precisely the same as that at issue here. In one sense, a setoff is defined as a cross-claim for which an action might be maintained by a defendant against a plaintiff, or as a counterdemand which a defendant holds against a plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action. (*General Motors Acceptance Corp. v. Vaughn* (1934), 358 Ill. 541, 548,

193 N.E. 483.) This type of setoff would be of the same nature as the setoff referred to in section 2—608(a) of the Code and in the principle stated in *Vieweg*.

The setoff at issue here, however, is not a separate claim or counterclaim, but a more limited notion tied to the concept of satisfaction of judgments. It is fundamental that a plaintiff may not recover more than once for the same injury, and the Illinois Supreme Court has *sua sponte* ordered that a plaintiff's award be reduced by any amounts received from other tort-feasors for the same injury. (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558, 411 N.E.2d 217.) The only possible limitation on the pursuit of this type of setoff is the time constraint applicable to supplemental proceedings for the enforcement of a judgment. *Klier*, 200 Ill. App. 3d at 128, 558 N.E.2d at 588-89.

We believe that the cases discussed above are entirely consistent. Section 2—608(a) provides a defendant with the choice of pursuing a *claim* against a plaintiff either within the same proceedings or as a separate action. *Vieweg* stands for the proposition that, whichever of these routes a defendant chooses, his pleadings must make clear what relief is sought in order to put the other party on proper notice. (*Vieweg*, 173 Ill. App. 3d at 474, 526 N.E.2d at 366; see also *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 200, 485 N.E.2d 1105 (the election afforded by section 2—608(a) merely permits a party to plead its claim in a separate action).) While these rules apply to counterclaims and setoffs generally, it must also be understood that a setoff entered against a judgment to prevent double recovery for the same injury is of a different nature. Such setoffs are not claims but are only elements relating to the satisfaction of a judgment.

Thus, we conclude that Delnor did not waive its right to pursue an order for satisfaction of judgment based on setoff of Brittany's settlement with Dr. Lamiot. We, therefore, affirm the judgment of the trial court in this regard.

In its cross-appeal, Delnor argues that the trial court erred by refusing to set off the Barkeis' $150,000 settlement with Dr. Lamiot against the judgment entered on the jury's award of $136,889.92 in their favor for past and future medical expenses. The crux of Delnor's argument is that its liability to the Barkeis is based solely on the cost of Brittany's medical expenses. Delnor contends that, because the Barkeis' settlement with Dr. Lamiot was, in part, directed toward these expenses, this award against Delnor should be reduced by the entire amount of the settlement.

Setoff in this instance would only have been appropriate to

the extent that the settlement with Dr. Lamiot was to compensate for the same injury for which Delnor was ultimately found liable, Brittany's medical expenses. (See *Wheeler v. Roselawn Memory Gardens* (1989), 188 Ill. App. 3d 193, 200-01, 543 N.E.2d 1328.) As the trial court correctly noted, however, the record does not establish how much of the Barkeis' $150,000 settlement was intended to compensate for Brittany's medical expenses. The settlement extinguished Dr. Lamiot's potential liability for the Barkeis' pending claims for *both* Brittany's medical expenses and the loss of her society. The court offered Delnor an opportunity to present further evidence on this point, but it declined to do so. Thus, there was no basis in the record upon which the trial court could have entered an order accurately setting off a portion of the settlement against the judgment against Delnor.

■ Although it concedes that it bore the burden of proof on this issue, Delnor suggests the record sufficiently reflects the amount of the settlement which was designed to compensate the Barkeis for Brittany's past and future medical expenses. First, Delnor notes that the jury found Brittany's past medical expenses to equal $62,792.92. Next, Delnor notes that the "Future Care Needs Assessment" found in the record lists Brittany's projected future medical expenses till age 18 to be $73,527.83. Noting that the total of these two amounts ($136,320.75) nearly equals the jury's medical expense award against Delnor ($136,889.92), Delnor concludes that Dr. Lamiot's settlement with the parents must have been intended to compensate them for all Brittany's past and future medical expenses.

This is purely unsupportable conjecture. Although a portion of the settlement was undoubtedly intended to compensate for Brittany's medical expenses, there is no evidence to support that it was intended to compensate for *all* such expenses. There is nothing in the record to suggest, for example, that Dr. Lamiot intended to accept responsibility for all such damages at a time when the Barkeis continued to press their suit against Delnor to recover for the same injuries, a suit which ultimately proved successful.

Delnor notes that the apportionment of the settlement rested with the Barkeis and Dr. Lamiot, and Delnor contends that it should not be penalized because of the settling parties' failure to apportion the settlement. Nevertheless, Delnor could have presented evidence on apportionment even under these circumstances. For example, Delnor could have called the persons who settled the suit on behalf of Dr. Lamiot to testify before the court regarding the portion of the settlement which was allocable to Brittany's medical expense claims. The Barkeis too could also have presented contrary evidence, and all such

evidence would have provided the trial court with a basis to decide the issue.

We conclude that the trial court correctly determined that it could not set off any portion of the Barkeis' $150,000 settlement against the award against Delnor because Delnor failed to demonstrate how much of the award was attributable to Brittany's medical expenses, the only expenses for which Delnor was liable to the Barkeis. Thus, the trial court's order on this issue is affirmed.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

DUNN and GEIGER, JJ., concur.