DAVID R. PASQUALE, Adm'r of the Estate of Diane K. Pasquale, Deceased, for the Benefit of Samantha Pasquale, Plaintiff-Appellee, v. SPEED PRODUCTS ENGINEERING, Defendant-Appellee and Cross-Appellee and Third-Party Plaintiff-Appellee (F and B Manufacturing Company, Defendant-Appellant and Third-Party Defendant-Appellant; David R. Pasquale, Indiv. and as Adm'r of the Estate of Diane K. Pasquale, Deceased, Plaintiff and Cross-Appellant; Wesley Law, Special Adm'r of the Estate of Raymond Law, Deceased, Plaintiff).

First District (4th Division)  No. 1—91—1738

Opinion filed August 26, 1993.—Rehearing denied September 27, 1993.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellant F & B Manufacturing Company.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring, William J. Jovan, and Leslie J. Rosen, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

Diane K. Pasquale died as a result of injuries she sustained on May 27, 1979, when part of the clutch mechanism of a race car struck her in the head as she and her husband, David R. Pasquale, were watching a drag race at the Great Lakes Dragway in Union Grove, Wisconsin. In addition to her husband, Diane was survived by her minor daughter, Samantha E. Pasquale.

As a result of the occurrence, David, both individually and as administrator of the estate of Diane, sought recovery against, among others, F & B Manufacturing Company (F & B), Speed Products Engineering (Speed), and Great Lakes Dragway, Inc. (Great Lakes). Prior to trial, Great Lakes settled the action brought against it. The cause proceeded to trial before a jury which returned verdicts against F & B and Speed and apportioned the damages on their contribution claims

30% against F & B and 70% against Speed. The trial court denied all post-trial motions and provided for certain setoffs against the verdicts by reason of the Great Lakes settlement. David, both individually and as administrator of the estate, and F & B have appealed.

Before addressing the issues on appeal, a brief recitation of the facts giving rise to this litigation is appropriate.

Speed is in the business of selling and distributing race car parts. F & B is in the metal fabricating business. In the late 1960's, Speed engaged F & B to fabricate clutch housings (bellhousings). Originally, the bellhousings produced by F & B for Speed were made from aluminum but subsequently they were produced from one-quarter-inch hot rolled steel.

Peak Brothers (Peak), a company engaged in building chassis for race cars, purchased a steel bellhousing from Speed which had been produced by F & B. Peak installed the bellhousing in a race car that it built for Clayton Harris, a professional race car driver.

On May 27, 1979, David and Diane were spectators at a drag racing event at the Great Lakes Dragway. Harris was competing in the event driving the car built for him by Peak. As his car accelerated, the clutch mechanism located within the bellhousing broke apart. Pieces of the clutch penetrated the bellhousing and were propelled into the spectator area. One of the pieces struck Diane in the head with such velocity that she was killed instantly. David was seated next to her at the time.

The instant action was filed on July 18, 1979. After Great Lakes effectuated its settlement, David filed a fourth-amended complaint naming only F & B and Speed as defendants. For purposes of this appeal, we are concerned only with counts I, II, and III of that complaint. Counts I and II were wrongful death actions (see Ill. Rev. Stat. 1991, ch. 70, par. 1 *et seq.*) brought by David as administrator of Diane's estate and grounded in allegations of strict product liability. Count I was brought against both F & B and Speed for the benefit of Samantha, as Diane's next of kin. Count II was against Speed only and brought for the benefit of David as Diane's surviving spouse. The manner in which counts I and II were pled was necessitated by the fact that recovery could not be had against F & B for David's benefit because the action against F & B was not filed within the two-year limitations period of the Wrongful Death Act. (Ill. Rev. Stat. 1991, ch. 70, par. 2(c).) However, because Samantha was a minor, a wrongful death action against F & B for her benefit was not similarly barred. (Ill. Rev. Stat. 1991, ch. 70, par. 2(c); *Wilbon v. D.F. Bast Co.* (1978), 73 Ill. 2d 58, 382 N.E.2d 784.) Count III was an action by David, indi-

vidually, against Speed only and brought on a theory of strict product liability seeking damages for emotional distress.

The case was tried before a jury on the fourth-amended complaint and the cross-claims for contribution brought by F & B and Speed against each other. F & B moved for a directed verdict on the wrongful death claim for Samantha's benefit both at the close of David's case and at the close of all of the evidence. The trial court denied the motions. Additionally, F & B moved for a directed verdict against Speed on Speed's counterclaim for contribution. That motion was also denied. After all of the parties rested, the trial court refused to instruct the jury on David's individual claim for emotional distress and, in effect, granted Speed a directed verdict on count III. After deliberating, the jury returned multiple verdicts which, as they relate to this appeal, read as follows:

"VERDICT FORM 1-A

As to the claim of the plaintiff, David Pasquale, for the benefit of Samantha Pasquale, we, the jury, find in favor of the plaintiff and against the defendants, F & B Manufacturing Company and Speed Products Engineering and assess plaintiff's damages in the sum of $1,500,000."

"VERDICT FORM II-A

As to the claims of the plaintiff, David Pasquale, as Administrator of the Estate of Diane Pasquale, for the benefit of himself, we, the jury, find in favor of the plaintiff and against the defendant, Speed Products Engineering and assess plaintiff's damages in the sum of $150,000."

F & B filed a post-trial motion requesting: a judgment notwithstanding the verdict in its favor and against David in his representative capacity for Samantha's benefit or, in the alternative, a setoff of $861,789 against the judgment awarded for the benefit of Samantha by reason of the settlement with Great Lakes and a judgment notwithstanding the verdict in its favor against Speed on Speed's claim for contribution. The trial court denied F & B's motions for judgment notwithstanding the verdicts and granted F & B a setoff of $430,894.50 against the verdict rendered against it for the benefit of Samantha and further found that David's share of the Great Lakes settlement would act as a full satisfaction of the verdict against Speed on the claim brought for his benefit.

David, individually and as administrator of the estate, also filed a post-trial motion requesting, *inter alia*, a new trial on the issue of damages only on the wrongful death claim brought for his benefit

against Speed and an order reinstating his individual claim for emotional distress and a new trial thereon on the issue of damages only. The trial court denied David's post-trial motion.

The issues on appeal are as follows: F & B claims error in the denial of its motion for judgment notwithstanding the verdict, the denial of its motion to dismiss Speed's contribution claim, and the failure of the court to grant a setoff for the full amount of the settlement with Great Lakes. David claims error in the dismissal of his individual claim for emotional distress and seeks a new trial on the issue of damages only in the wrongful death action brought for his benefit.

We first address the issues raised by F & B.

The theory of F & B's defense was that it did not design the bellhousing which it manufactured for Speed. F & B elicited evidence that Speed supplied the specifications, that F & B did not know how the part would be used, and that F & B was never asked to test the product. Further, F & B contends that David did not show that Speed's specifications were obviously dangerous.

■ Compliance with the specifications provided by a third party is a defense in a strict product liability action unless the specifications were so obviously dangerous that no competent manufacturer would follow them. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Loos v. American Energy Savers, Inc.* (1988), 168 Ill. App. 3d 558, 522 N.E.2d 841.) However, a component part manufacturer can be strictly liable when an injury is attributable to a defect in the component part itself. (*Thomas v. Kaiser Agricultural Chemicals* (1980), 81 Ill. 2d 206, 407 N.E.2d 32.) This proposition is true regardless of whether the defect in the component causes it to malfunction or the design of the component renders it faulty. *Thomas*, 81 Ill. 2d 206, 407 N.E.2d 32.

David introduced testimony that the drawing that F & B received from Speed for fabricating the bellhousing was amateurish, that F & B's employees made changes to the drawing, that the part was almost identical to one that F & B was making for another race car company, and that although Speed requested that the part be made from one-quarter-inch hot rolled steel, it was F & B that selected the grade of steel used. David's experts, H. Boulter Kelsay, Jr., and Norris Yonker, testified that material selection is part of the design of a product. Charles Coakley, one of F & B's employees, testified that there are different grades of hot rolled steel and some have greater strength and impact resistance.

Directed verdicts and judgments notwithstanding the verdict should be entered only in those cases in which all of the evidence,

when viewed in its aspect most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses, and draw the ultimate conclusion as to the facts. (*Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212.) The jury's conclusions relating to the issues of breach of duty, causation, damages, and other factual matters should not be set aside merely because different conclusions could be drawn. *Finley,* 19 Ill. 2d 428, 167 N.E.2d 212.

When the evidence in this case is viewed in its aspect most favorable to the plaintiff, it reveals a factual question as to F & B's involvement in designing the bellhousing. The jury resolved that issue against F & B and this court cannot and will not usurp the jury's function by reweighing the evidence on the issue. The trial court properly denied F & B's motion for judgment notwithstanding the verdict.

F & B's next argument concerns the denial of its motion for a directed verdict on Speed's contribution claim and the denial of its post-trial motion relating thereto. At trial, F & B contended that the counterclaim was barred by both the statute of limitations and the statute of repose. The trial court denied the motion on both grounds. In its post-trial motion, however, F & B sought relief from the denial of its motion on statute of limitations grounds but sought no relief from the denial of the motion on statute of repose grounds. In this appeal, F & B argues that the trial court erred in denying its motion on statute of repose grounds; no issue has been raised as to the statute of limitations.

F & B's argument on this question must fail for two reasons. First, by failing to raise the propriety of the trial court's denial of its motion for a directed verdict on statute of repose grounds in its post-trial motion, F & B has waived the issue for purposes of appeal. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.) Second, even if the issue was not waived, F & B's argument is without merit. The statute of repose applicable to strict product liability actions is set forth in section 13—213(b) of the Code of Civil Procedure, which provides as follows:

> "Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first

sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period." (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(b).)

The repose period contained therein is applicable to contribution actions premised upon the theory of strict product liability. *Thompson v. Walters* (1991), 207 Ill. App. 3d 531, 565 N.E.2d 1385.

In this case, the bellhousing F & B produced for Speed was sold to Peak on January 12, 1978, for use in a race car that Peak was building for Harris. Harris took possession of the car in December 1978. Speed's claim for contribution against F & B was filed on February 2, 1988. F & B argues that the contribution claim is barred because it was filed more than 10 years after the sale of the bellhousing to Peak.

The argument necessarily rests upon the flawed proposition that Peak was the "initial user, consumer, or other non-seller" (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(b)) of the bellhousing. A "seller" is defined in section 13—213(a)(4) of the Code of Civil Procedure as "one who, in the course of a business conducted for the purpose, sells, distributes, leases, assembles, installs, produces, manufactures, fabricates, prepares, constructs, packages, labels, markets, repairs, maintains, or otherwise is involved in placing a product in the stream of commerce." (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(a)(4).) Peak, as an assembler of Harris' car and as the installer of the bellhousing, falls within the definition of a "seller." Harris was the initial user, consumer, and nonseller to come into possession of the bellhousing. Harris acquired possession in December 1978. As such, the filing of Speed's contribution claim against F & B on February 2, 1988, was within the 10-year period of repose.

The final issue raised by F & B on appeal involves the adequacy of the setoff granted by the trial court against the damages awarded for Diane's death.

As indicated earlier, after the jury returned its verdicts in this case, the trial court granted F & B a setoff of $430,894.50 (50% of the value of the Great Lakes settlement) against the verdict rendered for the benefit of Samantha and further found that David's $430,894.50 share of the settlement with Great Lakes would act to satisfy the $150,000 verdict rendered for his benefit against Speed.

F & B argues that by apportioning the setoff for the settlement in ratio to the distribution of the settlement proceeds, in effect, the trial court only granted a setoff of $580,894.50 as opposed to the full set-off required under section 2(c) of the Contribution Act. (Ill. Rev. Stat. 1991, ch. 70, par. 302(c).) David responds by arguing that if a full set-off of $861,789 were granted, Samantha would fail to realize the full $1.5 million of pecuniary loss sustained by her as fixed by the jury. David contends that such a result would unjustly enrich F & B and deprive Samantha of a substantial portion of her recovery upon a claim that was separate and distinct from his claim.

Sections 2(a) and 2(c) of the Contribution Act provide as follows:

"(a) Except as otherwise provided in this Act, *where 2 or more persons are subject to liability in tort arising out of* the same injury to person or property, or *the same wrongful death*, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

\*\*\*

(c) *When a release* or covenant not to sue or not to enforce judgment *is given in good faith to one or more persons liable in tort arising out of* the same injury or *the same wrongful death*, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but *it reduces the recovery on any claim against the others* to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 70, pars. 302(a), (c).

In exchange for the payment of $695,000 in cash and certain future payments, Great Lakes received a release of all liability to David, both individually and as administrator of the estate of Diane K. Pasquale, deceased. The release document did not discharge the liability of F & B. The Great Lakes settlement was found to be in good faith by order of court entered on May 25, 1990. Although the actual release document states that it releases Great Lakes from all claims by David both individually and as administrator of the estate of Diane, the order of July 16, 1990, which distributed the proceeds of the settlement, leaves no question that the entire amount was distributed to David and Samantha as spouse and next of kin of the decedent under the provisions of the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 1 *et seq.*) and nothing was distributed to David on any individual claim he may have had. The consideration paid for the release of Great Lakes had a present value of $861,789 as found by the order of

July 16, 1990, and neither party has disputed either the good faith of the settlement or its value. That settlement distribution order found that David and Samantha were Diane's surviving spouse and next of kin, respectively, and fixed their dependency upon her at 50% each. Based upon their equal percentages of dependency, the court distributed the proceeds of the settlement with Great Lakes equally to David and Samantha.

■ We believe that the trial court erred when it looked to the prior allocation of the Great Lakes settlement in determining the setoff to which F & B was entitled based upon that settlement. (*Foster v. Kanuri* (1992), 241 Ill. App. 3d 677, 608 N.E.2d 8.) There is no question that both Great Lakes and F & B were subject to liability in tort arising from the same wrongful death. The plain and unambiguous language of the Contribution Act provides that the consideration paid by Great Lakes for its good-faith settlement reduces the recovery against F & B on *any* claim against it by reason of that same wrongful death. (Ill. Rev. Stat. 1991, ch. 70, par. 302(c).) If, as David argues, a strict application of the setoff provisions of the Contribution Act will result in Samantha receiving less than a full recovery for her pecuniary loss as fixed by the jury, that circumstance will be as a result of David having had apportioned to him 50% of the proceeds of the Great Lakes settlement when a jury subsequently fixed his total damages at 9% of the total recoverable pecuniary loss suffered as a result of Diane's death.

The fact that this case had to be presented to the jury as if there were two separate and distinct actions against Speed, F & B's joint tortfeasor, due to the expired statute of limitations on the wrongful death action for David's benefit against F & B, does not convert a single cause of action against Speed into two separate actions. The Wrongful Death Act does not create individual rights of action in favor of those for whose benefit an action under its terms may be brought. See *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352; *Addison v. Health & Hospital Governing Comm'n* (1977), 56 Ill. App. 3d 533, 371 N.E.2d 1060; *In re Estate of Edwards* (1982), 106 Ill. App. 3d 635, 435 N.E.2d 1379.

In this case, after the jury returned its verdicts in favor of David in his representative capacity against both F & B and Speed, they should have been combined into a single judgment for $1.65 million for which Speed and F & B would stand jointly and severally liable for $1.5 million and Speed only would stand liable for the remaining $150,000. Once that was accomplished, then the trial court should have granted a setoff of $861,789 against the joint portion of the

judgment, leaving a total amount owed on the combined judgment of $788,211, for which F & B and Speed would be jointly and severally liable for $638,211 and Speed only would be liable for the remaining $150,000. Such a procedure would comply totally with the letter of the Contribution Act and F & B would receive the setoff to which it is entitled by reason of the Great Lakes settlement. On remand, the trial court shall first combine the verdicts against F & B and Speed into a single judgment and then grant F & B a setoff of $861,789 against the $1.5 million portion of that judgment for which it stands jointly and severally liable. It shall then order the remaining sums distributed pursuant to section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, par. 2), taking into consideration the sums David already received pursuant to the order distributing the proceeds of the settlement.

In his cross-appeal, David, as administrator of the estate, requests that the jury's award of "his" damages under the Wrongful Death Act be vacated and the matter remanded for a new trial on that issue only. If appropriate, a court has the power to grant a new trial restricted to the issue of damages only. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4.) However, the assessment of damages is a factual question committed to the discretion of the jury. (*Johanek v. Ringsby Truck Lines, Inc.* (1987), 157 Ill. App. 3d 140, 509 N.E.2d 1295.) A court will not substitute its judgment on the adequacy of a damage award unless the jury's determination on the issue is contrary to the manifest weight of the evidence. (*Voss v. Tune* (1984), 121 Ill. App. 3d 692, 460 N.E.2d 51.) To be against the manifest weight of the evidence, a jury's award of damages must be clearly erroneous and unreasonable when examined in light of the facts and evidence in the case. (*Gilman v. Kessler* (1989), 192 Ill. App. 3d 630, 548 N.E.2d 1371.) As was noted in *Barr v. Groll* (1991), 208 Ill. App. 3d 318, 322, 567 N.E.2d 13, 16, "[a] verdict may be found contrary to the manifest weight of the evidence where the size of the award is the result of passion or prejudice [or] where the amount is palpably inadequate."

The jurors heard the evidence relating to David's pecuniary loss on the death of his wife. They were informed that he remarried 37 months after her death and were properly instructed that they could not award damages for his loss of society and sexual relations for any period after the date of his remarriage. We cannot find that fixing David's pecuniary loss at $150,000 was against the manifest weight of the evidence. David's attempt to argue the inadequacy of the jury's award on this element of damage by a comparison to a damage award

for loss of society in an unrelated case is wholly inappropriate. The propriety of an award of damages may not be measured by a comparison with verdicts in other cases. (*Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 481 N.E.2d 957.) Each verdict must be examined in light of the particular injury in a given set of circumstances with humble deference to the jury in making its determination. *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63.

■ The record in this case does not support the conclusion that, in fixing damages for David's pecuniary loss for the death of his wife, the jury acted out of passion or prejudice or that the damages were clearly erroneous or unreasonable. We cannot say that the damages were clearly inadequate, and for these reasons, the trial court did not err when it denied David's motion for a new trial on the issue of damages.

■ The final issue for review is the propriety of the trial court's grant of a directed verdict in favor of Speed on David's individual claim. Count III of the complaint was an action grounded in strict product liability seeking damages solely for emotional distress. Our supreme court in *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194, held that strict liability should not be extended to include recovery for emotional distress and mental anguish. (See also *Rahn v. Gerdts* (1983), 119 Ill. App. 3d 781, 455 N.E.2d 807.) David argues that the right to recover damages for emotional distress in a strict product liability action should be governed by the same rules attendant to a plaintiff's right of recovery in a negligence action. David contends that recovery in both negligence and strict product liability rests upon the same cornerstone of foreseeability of harm and, as such, there is no logical reason to differentiate between the type of damages that may be recovered solely based upon the plaintiff's theory of recovery.

Were we writing on a clean slate, we would address David's theory on its merits. However, we are foreclosed by our supreme court's decision in *Woodill* because trial and appellate courts lack the authority to overrule the supreme court or to modify its decisions. *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 551, 457 N.E.2d 1, 3.

For these reasons, the trial court was correct in directing a verdict at the close of the evidence on David's individual claim.

Accordingly, we reverse the judgment of the trial court as it relates to the setoff granted to F & B and remand the cause for further proceedings consistent with this decision. We affirm the trial court in its denial of F & B's motion for judgment notwithstanding the verdict,

in its denial of F & B's post-trial motion relating to the timeliness of Speed's claim for contribution, in directing a verdict on David's individual action for emotional distress, and in denying David's motion for a new trial on the issue of damages.

Affirmed in part; reversed in part and remanded with directions.

CAHILL, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent from the opinion of the majority on the matter of the setoff.

The trial court returned a verdict in favor of Samantha in the amount of $1,500,000 and in favor of David in the amount of $150,000. There previously had been a settlement, in round numbers, of $860,000. A judge of the circuit court found the settlement to be in good faith and apportioned the recovery on a 50-50 basis so that David and Samantha each received $430,000. At the conclusion of the trial, the trial judge determined the setoff as follows:

| | |
|---|---|
| Verdict for Samantha | $1,500,000 |
| Setoff for settlement | – 430,000 |
| Judgment for Samantha | $1,070,000 |
| | |
| Verdict for David | $  150,000 |
| Setoff for settlement | 430,000 |
| Judgment for David | $        0 |

The majority on appeal calculates the setoff as follows:

| | |
|---|---|
| Verdict for Samantha | $1,500,000 |
| Verdict for David | + 150,000 |
| Total of verdicts | $1,650,000 |
| Setoff | – 860,000 |
| Judgment to be apportioned by the trial court | $  790,000 |

The holding of the majority gives the first settling plaintiff a right in many cases to adversely affect a coplaintiff in either a wrongful death or a common law situation. For example, assume David settled in good faith with one defendant for $2 million and Samantha did not settle. A joint verdict of $1.5 million would result in the following calculation:

| | |
|---|---|
| Verdict | $1,500,000 |
| Setoff | 2,000,000 |
| Judgment to be distributed to Samantha and David | $ 0 |

The matter might be somewhat obscured by the procedural peculiarities of the Wrongful Death Act. Assume David and Samantha had common law tort claims against the jointly and severally liable tortfeasors. Also assume the same factual setting as in the instant case, that is, that they each settled for $430,000, then proceeded to trial against the remaining defendant and obtained judgments of $150,000 and $1,500,000. The judgments in that common law tort action would be the same as those entered by the trial court in this wrongful death case. I believe the results should be the same in a wrongful death or a common law situation.

The majority states that a wrongful death action is a "single cause of action" (252 Ill. App. 3d at 733) and notes that the Contribution Act provides that a good-faith settlement reduces the recovery "on *any* claim." (Emphasis in original.) (252 Ill. App. 3d at 733, citing Ill. Rev. Stat. 1991, ch. 70, par. 302(c).) From this, the majority concludes that the entire verdict must be off set by the entire settlement. This reasoning carries the legal fiction of a single cause of action to an unreasonable conclusion. This reasoning is not necessary to prevent a double recovery, as is asserted by the defendant. Instead, the ultimate denouement of the majority's conclusion is to subject the coplaintiff to fortuity, because if the plaintiff who settles receives more than a jury would give, the excess will be deducted from the recovery due the other plaintiff. I see nothing intrinsic in the Wrongful Death Act to warrant this result. Nor is the majority's conclusion supported by logic. While there may be only one lawsuit, each of the parties has a separate right to recover for his or her pecuniary injury.

This concept is embodied in Illinois Pattern Jury Instructions, Civil, No. 31.09 (3d ed. 1992) (hereafter IPI Civil 3d). That instruction states that the plaintiff brings the action in a representative capacity but that the plaintiff represents the surviving spouse and the next of kin. It further states that "[t]hey are the real parties in interest in this lawsuit, and in that sense are the real plaintiffs whose damages you are to determine." (IPI Civil 3d No. 31.09 (1992).) As with all other rights, the parties may compromise those rights and after those rights are compromised any recovery that party has against any other defendant will be reduced by what he

or she has already received. This is patently clear in an action involving common law injury and should be no less clear in a wrongful death situation. An overcompensation by one settling plaintiff cannot diminish the recovery of any other plaintiff. It appears to me beyond cavil that this was not the legislature's intent in a wrongful death situation any more than it would have been its intent in a common law situation.

The majority remands the $790,000 judgment to the circuit court for a hearing under section 2 of the Wrongful Death Act, which provides that the court shall distribute the amount recovered to the spouse and next of kin based on the percentage of the dependency of each person on the deceased. (Ill. Rev. Stat. 1991, ch. 70, par. 2.) The majority does not consider the previous order of the trial court dividing the setoff evenly as constituting the required hearing on the percentage of dependency. It is true that there is nothing in the record to suggest that a hearing was in fact held on dependency. However, I believe that the trial court in applying the setoffs did what it was required to do under section 2 of the Wrongful Death Act, that is, it considered the dependency of Samantha and David on the decedent. While this may not have been done in a formal way, the trial court was in a position to consider the evidence, and the ultimate effect of its actions was that the dependency was so considered. After considering that dependency, it deducted the amounts that each party had received in settlement just the same as would have been done in a common law action.

This situation is unusual in that the jury, for the reasons stated in the majority, set separate verdicts for David and Samantha. In the ordinary situation, there will be only one verdict, and in that event I believe the trial court should set the amount of dependency and then deduct any settlement that any party receives from a settling defendant.