RICHARD DOLAN, as Adm'r of the Estate of Anne Dolan, Deceased, Plaintiff-Appellant, v. FRANK GAWLICKI *et al.*, Defendants-Appellees.

Third District   No. 3—93—0390

Opinion filed February 2, 1994.

Raymond P. Schmitz and Alvin W. Block, both of Alvin W. Block & Associates, of Chicago (Jerome E. Boyle, of counsel), for appellant.

James P. DeNardo, of McKenna, Storer, Rowe, White & Farrug, of Chicago (Christine L. Olson, of counsel), for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Richard Dolan (Dolan), appeals from an order granting the defendants, Frank Gawlicki and Gawlicki and Hussey, Inc., a reduction in the jury's award for settlement amounts the defendants' primary insurance carrier paid to Dolan prior to trial.

Dolan argues that the trial court committed error in reducing the verdict by amounts the defendants previously paid in partial settlement of the case. We agree and reverse. We cannot approve the setoff here because the trial court failed to allocate damage amounts to particular settled claims.

On June 8, 1989, Anne Dolan (Anne) was killed when a van driven by defendant Frank Gawlicki and owned by defendant Gawlicki and Hussey, Inc., collided with Anne's car. Anne was survived by her husband, plaintiff Richard Dolan, and her two children, Kevin Dolan (Kevin) and Erin Dolan (Erin). On July 26, 1989, Dolan was appointed special administrator of his wife's estate. On the same day, he filed a two-count complaint against the defendants for wrongful death and for Anne's conscious pain and suffering between the time of the accident and the time of her death. Dolan's complaint included allegations of loss of services, society and consortium.

On September 4, 1990, Dolan entered into a partial settlement with both defendants. The defendants' primary insurance carrier paid the policy limit of $500,000. In exchange for the partial settlement amount, Dolan signed a covenant not to execute any judgment he might obtain against the defendants' personal or corporate assets. The $500,000 settlement was distributed as follows: $265,855.11 to Dolan, $50,000 to Kevin, and $50,000 to Erin. The remainder of the settlement amount was applied toward attorney fees and payment to a third party for property damage. The trial court did not determine the amounts applicable to particular injuries for which the settlement compensated Dolan. After Dolan and the defendants effected the partial settlement, Dolan proceeded to trial against the defendants with their excess insurance carrier.

On November 8, 1991, Dolan remarried. Subsequently, on October 21, 1992, the defendants filed a motion *in limine* seeking, among other things, to limit any damages for Dolan's loss of consortium and

services to the period between Anne's death and Dolan's remarriage. On March 1, 1993, the trial court granted the motion *in limine*. As a result, Dolan's claim for loss of services and consortium beyond the date of his remarriage was no longer an element of damages in the litigation.

Shortly thereafter, the defendants admitted liability for Anne's death. Consequently, the case proceeded to trial on the issue of damages alone. After a trial, the jury returned a verdict for the Dolans on March 5, 1993. The jury assessed damages of $1,225,000 and allocated the awards as follows: $100,000 for Dolan's loss of society; $500,000 each for Kevin and Erin's loss of society; $25,000 for the loss of Anne's services; and $100,000 for the loss of Anne's income.

On March 22, 1993, the defendants filed a motion to offset the jury's award by $492,900.99, the amount of the prior settlement previously paid to the Dolans. The defendants asserted that the prior payment partially satisfied the verdict amount. On April 14, 1993, the trial court agreed and ordered that the jury's award be reduced by the amount the Dolans received from the defendants' primary insurance carrier. On May 11, 1993, Dolan filed a timely notice of appeal.

Dolan contends that the trial court erred in granting the defendants' motion for setoff. In support of his contention, Dolan asserts that because the trial court failed to make allocations of the settlement amounts to various elements of damages, the verdict cannot be reduced by the settlement amount in any principled manner. For the reasons which follow, we agree with Dolan's contention. Accordingly, we reverse the judgment of the trial court.

In *Barkei v. Delnor Hospital* (1990), 207 Ill. App. 3d 255, 565 N.E.2d 708, the plaintiffs were an infant and her parents who brought an action against two physicians and a hospital for injuries sustained shortly after the infant's birth. The plaintiffs sought damages for, among other things, the child's past and future medical expenses. Prior to trial, the plaintiffs settled with the physicians for $1,150,000. Of that settlement amount, $150,000 represented the parents' settlement of their claims against the physicians. Following the trial against Delnor alone, the jury awarded a verdict of $166,886.92 allocable to the parents.

Delnor sought a reduction of its liability to the parents based on the prior settlement with the physicians. The trial court refused, stating that it would have to speculate in order to determine what amounts of the parents' settlement were attributable to (1) the parents' medical expenses already incurred; (2) the parents' projected future medical expenses for the child to the age of majority; and (3)

the parents' claims for the loss of their child's society. The Second District Appellate Court affirmed, noting that the record did not establish how much of the parents' settlement with the physicians was intended to compensate for the child's medical expenses. Finally, the court noted that though part of the settlement was intended to compensate for the child's medical expenses, no evidence in the record indicated that the settlement provided compensation for all such expenses. *Barkei*, 207 Ill. App. 3d at 265-67, 565 N.E.2d at 714-15.

In *Kipnis v. Meltzer* (1993), 253 Ill. App. 3d 67, the plaintiff and her husband Ira filed an action claiming negligent care and treatment by the defendant physicians, Drs. Meltzer and Chervony. Prior to trial, the plaintiff and Ira dismissed their claims against Chervony in exchange for payment of $300,000. None of the parties asked the court to allocate the settlement between the plaintiff and Ira. Following the settlement, Ira dismissed his claim against Meltzer. However, the plaintiff obtained a $20,000 jury verdict against Meltzer. After the trial, Meltzer filed a motion seeking a reduction of the plaintiff's verdict to zero by virtue of the pretrial settlement with Chervony. The trial court denied Meltzer's motion. The appellate court affirmed, noting that the settlement with a joint tortfeasor was not apportioned between the plaintiff and her husband. Accordingly, Meltzer was unable to prove how much of the $300,000 settlement with Chervony was attributable to the plaintiff's claims as opposed to Ira's claims. Consequently, the court declined to set off any of the settlement against the verdict for lack of a measurable way in which to determine the amount to be offset. (*Kipnis*, 253 Ill. App. 3d at 71.) We conclude that *Barkei* and *Kipnis* stand for the proposition that a court may not set off settlement amounts *unless* the court has made a previous allocation of the damages for particular claims.

Here, the court distributed $265,855.11 to Dolan as his share of the pretrial settlement amount. At the time the defendants effected this partial settlement, the loss of Anne's society and services to Dolan beyond the date of his remarriage was still an element of the damages in the case. Nothing in the record indicates what dollar amounts in the pretrial settlement were attributable to Dolan's claim for loss of society and services beyond the date of his remarriage. The defendants successfully removed this element from the litigation prior to trial, effectively ending Dolan's right to recover any further damages for loss of society and services after he remarried. Consequently, the jury's award could not include damages for Dolan's loss of society and services after remarriage. The defendants cannot now claim that Dolan will receive a double recovery when the pretrial settlement apparently compensated Dolan for the loss of Anne's soci-

ety and services for the rest of his life. In contrast, the jury's award compensated Dolan *only* for the loss of society and services *between the time of Anne's death and his remarriage.* In any event, the record provides absolutely no guidance regarding the apportionment of the settlement award to the various elements of damages in the case at that time. Finally, we would be forced to engage in speculation and conjecture to determine what portion of the settlement was attributed to Dolan's loss of society and services due to Anne's death. Without guidance from the record, we cannot make such a decision. Following a careful review of the record, we conclude that the trial court erred in reducing the jury's award by the total amount of the pretrial settlement.

In addition, we find that a disparity would result in setting off the jury's verdict by the *entire* amount of the pretrial settlement. For that reason, we also agree with the reasoning of Justice Jiganti's dissenting opinion in *Pasquale v. Speed Products Engineering* (1993), 252 Ill. App. 3d 724. In *Pasquale*, the plaintiffs' decedent was killed while watching a drag race. The plaintiffs, the decedent's husband and minor daughter, brought a wrongful death action against three defendants. The first defendant settled with the plaintiffs for about $860,000. The trial court found that the settlement was in good faith and attributed half of the settlement amount to the husband and half to the daughter. The case proceeded to trial against the remaining two defendants. The jury awarded $1,500,000 to the daughter and $150,000 to the husband. After trial, the defendants sought to apply the entire settlement amount (approximately $860,000) to the entire jury award ($1,650,000). Instead, the trial court attributed half of the settlement to the daughter and reduced her $1,500,000 award to approximately $1,070,000. The court then attributed half of the settlement to the husband and reduced his $150,000 award to zero. On appeal, the *Pasquale* majority reversed, holding that the trial court should have reduced the entire jury award by the entire settlement amount. *Pasquale*, 252 Ill. App. 3d at 735.

Dissenting, Justice Jiganti explained that such an approach would lead to unfair results in cases with multiple plaintiffs where the jury gives separate verdicts for each plaintiff:

> "[T]he ultimate denouement of the majority's conclusion is to subject the coplaintiff to fortuity, because if the plaintiff who settles receives more than a jury would give, the excess will be deducted from the recovery due the other plaintiff. I see nothing intrinsic in the Wrongful Death Act to warrant this result." (*Pasquale*, 252 Ill. App. 3d at 737 (Jiganti, J., dissenting).)

We find Justice Jiganti's reasoning persuasive in the case at hand.

Here, Dolan, Kevin and Erin obtained a settlement with certain dollar amounts attributed to each of them. They have also obtained a jury verdict, composed of particular awards for each of them. The defendants sought and received a reduction of the entire jury award ($1,225,000) by the amount of the entire settlement ($492,900.99). Were this result allowed to stand, Kevin and Erin would be placed at the greater disadvantage because they received the higher jury verdicts. However, the highest amount of the verdict attributable solely to Dolan is $225,000. Over $265,000 of the pretrial settlement was apportioned to him. If the entire settlement amount is applied to the entire jury verdict without regard to the allocations made, the remainder of the settlement to be set off will be deducted from the recovery under the verdict due Kevin and Erin. Such a result is unfair and unwarranted by the circumstances in this case, as "each of the parties has a separate right to recover for his or her pecuniary injury." (*Pasquale*, 252 Ill. App. 3d at 737 (Jiganti, J., dissenting).) For the foregoing reasons, we conclude that Justice Jiganti has articulated the better approach for determining the reduction of verdicts in cases such as the one at hand.

For the reasons indicated above, we conclude that the defendants are not entitled to any reduction of the jury verdict. We find that the lack of evidence concerning apportionment of dollar amounts to the elements of damages in the settlement and the verdict makes impossible a reduction of the entire jury verdict by the pretrial settlement amount. Further, we conclude that an unfair disparity would result if the entire settlement amount were held to offset the entire jury verdict. Accordingly, the April 14, 1993, order granting the defendants a reduction of the jury verdict is reversed.

Reversed.

BRESLIN and LYTTON, JJ., concur.